# United States Court of Appeals
## For the First Circuit

No. 06-2300

BARBARA CORDI-ALLEN AND JOHN ALLEN,

Plaintiffs, Appellants,

v.

JOSEPH R. CONLON ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Circuit Judge,
Selya, Senior Circuit Judge,
and Lipez, Circuit Judge.

Paul Revere, III for appellants.
Deborah I. Ecker, with whom Leonard H. Kesten, Deidre Brennan Regan, and Brody, Hardoon, Perkins & Kesten, LLP, were on brief, for appellees.

July 27, 2007

**SELYA**, <u>Senior Circuit Judge</u>.  Land-use restrictions often set neighbor against neighbor, and can be a source of considerable turmoil in otherwise tranquil communities.  So it is here: Barbara Cordi-Allen and her husband John Allen (the Allens) are landowners in the Cape Cod town of Truro, Massachusetts (the Town).  They own a waterfront lot and wish to improve it.  They have thus far been stymied in their efforts by a series of zoning, environmental, and licensing restrictions.

The Allens accuse the Town of singling them out for unfavorable treatment and thwarting their plans.  The Town, with equal fervor, accuses the Allens of seeking advantages to which they are not entitled.  The ill will has spread like a malignant growth and has come to envelop several of the Allens' neighbors.

After many years of travail, the Allens elevated the feud to constitutional proportions: they condensed their grievances into a so-called "class of one" claim, alleging that the disparate treatment they had received infringed their rights under the Equal Protection Clause.  <u>See</u> U.S. Const. amend. XIV.  The Town heatedly denied these allegations.  The district court sided with the Town and granted summary judgment in its favor.  <u>See</u> <u>Cordi-Allen</u> v. <u>Conlon</u>, No. 1:05-cv-10370, 2006 WL 2033897, at *8 (D. Mass. July 19, 2006).

We are called upon to review that order.  In doing so, we take the supported facts in the light most favorable to the

nonmovants (here, the Allens).  <u>Cabán Hernández</u> v. <u>Philip Morris USA, Inc.</u>, 486 F.3d 1, 8 (1st Cir. 2007).

The events surrounding this case are byzantine, and a full recitation would serve no useful purpose.  Thus, we offer only a decurtate summary, supplemented as needed in the course of our analysis of the relevant legal issues.  We urge readers who hunger for more detailed information to consult the district court's comprehensive opinion (which even the Allens, at oral argument before us, commended as doing "a good job of gleaning the facts").

This controversy dates back to March of 1996, when the Allens purchased a piece of waterfront property in Truro.  The parcel abuts properties owned by Brooke Newman, Sarah Landis, and the Pamet Harbor Yacht Club.  Other neighbors in relatively close proximity include the Sextons and the Perrys.

The Allens' lot is undersized.  The only improvements on it as of the date of acquisition were a small 400-square-foot cottage and a short pier.[1]  The Allens aspired to build a compound. Their plans contemplated erecting a new 1,512-square-foot dwelling with an attached 1,750-square-foot garage on a solid foundation with crawl space drainage; expanding the existing cottage (originally built as a boathouse) into a 640-square-foot residence; and installing a large swimming pool with adjacent decks.  To top

_____

[1]The Town subsequently took the tidelands around the pier in an eminent domain proceeding.  The Allens have retained an easement encompassing the pier.

matters off, the Allens proposed to install floats as a means of extending their existing pier.

A number of disagreements arose with respect to the Allens' plans. These included disputes about the interpretation and application of zoning laws and environmental restrictions. The controversy soon extended to the licensing of the proposed floats.

The Allens characterize all of this as obstructive behavior. They protest that it stands in stark contrast to the accommodations lavished on other residents. Their next-door neighbor, Newman, is the poster child for the claim of unequal treatment. In addition, they insist that Landis, the Sextons, and the yacht club all have received more favorable receptions from the Town.

Frustrated by these perceived inequities, the Allens filed suit in a Massachusetts state court in February of 2005. Their complaint contained five counts. The first, third, fourth, and fifth counts are not relevant here. The sole count with which we are concerned — count 2 — invoked 42 U.S.C. § 1983 and alleged that the Town had denied the Allens equal protection of the laws.

On the basis of the equal protection claim, the defendants removed the case to the federal district court. See 28 U.S.C. §§ 1331, 1441. In due course, the Town moved for summary judgment with respect to count 2. See Fed. R. Civ. P. 56. The district court concluded that the Allens had not shown that the Town

had treated them differently from similarly situated parties and entered judgment on the equal protection claim. See Cordi-Allen, 2006 WL 2033897, at *8. It then remanded the remaining counts to the state court. See id.; see also 28 U.S.C. § 1367(c).

This timely appeal ensued. We have appellate jurisdiction notwithstanding the remand. The rule is that when a district court enters a final judgment on all the federal claims then pending in a civil action and contemporaneously remands all remaining claims to a state court, immediate appellate review of that collateral order is available. See Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 99 (1st Cir. 2001) (per curiam).

The applicable standard of review is familiar. We appraise a grant of summary judgment de novo. Galloza v. Foy, 389 F.3d 26, 28 (1st Cir. 2004). We are not wed to the district court's rationale but, rather, may affirm its order on any independent ground made manifest by the record. Houlton Citizens' Coal. v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).

To warrant affirmance of an order for summary judgment, the record must disclose no genuine issue as to any material fact and show conclusively that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). An issue is genuine if, on the evidence presented, it "may reasonably be resolved in favor of either party" at trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). By like token, a fact is material if it

"possess[es] the capacity to sway the outcome of the litigation under the applicable law." Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997) (internal quotation marks omitted). In the final analysis, then, "[t]he nonmovant may defeat a summary judgment motion by demonstrating, through submissions of evidentiary quality, that a trialworthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006).

In applying these tenets, we take the facts in the light most hospitable to the nonmovant and draw all reasonable inferences in that party's favor. Galloza, 389 F.3d at 28. When doing so, however, we give no weight to conclusory allegations, unsupported conjecture, or free-wheeling invective. Id.

This is a rifle-shot appeal: the only assignment of error advanced by the Allens is that the district court blundered in concluding that they had not adduced facts sufficient to survive summary judgment on their equal protection claim against the Town.[2] That theory runs along the line that the Allens constitute a "class

_____

[2]The Town insists that it is not a proper target for this claim because a municipality cannot be held liable for the acts of its agents or employees under a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Relatedly, it argues that the Allens have failed to allege a municipal custom or policy underlying the putative equal protection violation. See, e.g., Collins v. City of Harker Heights, 503 U.S. 115, 120-24 (1992). But the Allens have alleged a series of purportedly discriminatory acts undertaken by a number of different municipal officials, some of whom are high-ranking. Consequently, we assume, for argument's sake, that the Town is a proper defendant.

of one," impermissibly singled out for unfavorable treatment by the Town.  See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).  Such a claim is cognizable when — and only when — a "plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.  At the summary judgment stage, of course, this allegation must be backed by competent evidence.

The Allens maintain that they have offered probative evidence on all the elements that are necessary to forge such a cause of action.[3]  The district court rejected the Allens' importunings: it concluded that while the Allens had presented a plethora of evidence concerning a number of other landowners, they had failed to show that these landowners were similarly situated to them.  The main thrust of the Allens' appeal is the claim that the district court "erred in placing [a] burden on the Allens [that] should have been placed upon the moving party" with respect to this issue.  Appellants' Br. at 20.

In evaluating this argument, we do not write on a pristine page.  Although "[t]he formula for determining whether

---

[3]We need not reach any question of whether, post-Olech, a plaintiff must demonstrate malice or bad faith intent to injure when there is no discrimination based on typically impermissible categories.  See Bizzarro v. Miranda, 394 F.3d 82, 88 (2d Cir. 2005).  For present purposes, it suffices to say that the Allens fail to satisfy the "similarly situated" requirement.  See text infra.

-7-

individuals or entities are 'similarly situated' for equal protection purposes is not always susceptible to precise demarcation," Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 8 (1st Cir. 2001), the case law makes clear that the burdens of production and persuasion must be shouldered by the party asserting the equal protection violation. Thus, "[p]laintiffs claiming an equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently." Buchanan v. Maine, 469 F.3d 158, 178 (1st Cir. 2006) (emphasis in original) (internal quotation mark omitted).

The Allens also argue that, regardless of the allocation of burdens, the district court demanded more of them than the law allows. In their view, the degree of similarity between their situation and the situations of the landowners whom they identified as comparators was, on the evidence adduced, a question of material fact that should have been left to a jury. This argument cannot withstand scrutiny.

To be sure, the ultimate determination as to whether parties are similarly situated is a fact-bound inquiry and, as such, is normally grist for the jury's mill. But that does not mean that every case, regardless of the proof presented, is a jury case. To carry the burden of proving substantial similarity, "plaintiffs must show an extremely high degree of similarity between themselves and

the persons to whom they compare themselves." Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). While the applicable standard does not require that there be an "[e]xact correlation," Tapalian v. Tusino, 377 F.3d 1, 6 (1st Cir. 2004), there must be sufficient proof on the relevant aspects of the comparison to warrant a reasonable inference of substantial similarity.[4] Thus, the proponent of the equal protection violation must show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile. See Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996).

The "similarly situated" requirement must be enforced with particular rigor in the land-use context because zoning decisions "will often, perhaps almost always, treat one landowner differently from another." Olech, 528 U.S. at 565 (Breyer, J., concurring). Given this template, virtually every zoning decision — in the absence of a sensible limiting principle — would be a candidate to find its way to federal court in the guise of an equal protection claim. Cf. Creative Env'ts, Inc. v. Estabrook, 680 F.2d

---

[4]We note that the degree of similarity required may be relaxed somewhat if the plaintiff has presented evidence of "personal malice and 'bad faith' retaliation." Tapalian, 377 F.3d at 7. Thus, while we do not reach whether a class of one suit may be maintained in the absence of malice, see supra note 3, evidence of malice is always relevant.

822, 833 (1st Cir. 1982) (warning that "[e]very appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner" and can be given a constitutional label) (emphasis in original). The "similarly situated" requirement furnishes the limiting principle that guards against such a devolution.

This requirement demands more than lip service. It is meant to be "a very significant burden." Discovery House, Inc. v. Consol. City of Indianapolis, 319 F.3d 277, 283 (7th Cir. 2003); see Creative Env'ts, 680 F.2d at 883 (explaining that it is not enough to give land use "claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983"). It is inadequate merely to point to nearby parcels in a vacuum and leave it to the municipality to disprove conclusory allegations that the owners of those parcels are similarly situated.

Seen against this background, "a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001); see McDonald v. Vill. of Winnetka, 371 F.3d 992, 1002 (7th Cir. 2004). That principle may apply even though, as in this case, the plaintiffs have presented copious evidence concerning a multiplicity of

-10-

possible comparisons. See, e.g., Bell v. Duperrault, 367 F.3d 703, 708 (7th Cir. 2004); cf. Barrington Cove, 246 F.3d at 8-9 (upholding grant of Rule 12(b)(6) motion to dismiss when plaintiff failed to establish similarity with "reasonable particularity" and the facts alleged suggested "entirely reasonable" grounds for disparate treatment).

With this framework in place, we return to the case at hand. The Allens emphasize that they are subject to the same zoning and environmental strictures as their neighbors and argue that any material discrepancy in outcomes must, a fortiori, be a result of unequal application of the law. But casting the argument in those terms oversimplifies the analysis and fails to account for the fact that "[v]arious factual traits, circumstantial nuances, and peculiarities can set entities apart, rendering them, by virtue of their differences, amenable to disparate treatment." Racine Charter One, Inc. v. Racine Unified Sch. Dist., 424 F.3d 677, 681 (7th Cir. 2005).

The burden that a class of one plaintiff must carry at the summary judgment stage is considerably heavier than a mere showing that others have applied, with more auspicious results, for the same benefit that he seeks. See Jennings v. City of Stillwater, 383 F.3d 1199, 1214 (10th Cir. 2004); see also Clubside, 468 F.3d at 159 (describing a plaintiff's burden at summary judgment in a class of one case as "more stringent than that used at summary

-11-

judgment in the employment discrimination context").  Were the law otherwise, the federal court would be transmogrified into a supercharged version of a local zoning board — a zoning board on steroids, as it were.

Thus, the Allens — in order to show that other parties were similarly situated to them — needed to adduce evidence sufficient to establish factual as well as regulatory similarity. Close perscrutation of the record readily indicates that they failed to fulfill this obligation.  We explicate this conclusion by specific reference to the four principal instances upon which the Allens rely in their effort to show that the Town singled them out for disparate treatment.

First, the Allens lament that the town counsel informed them that, due to their undersized lot, they would be required to seek a variance or special permit as a precondition to proceeding with the construction of their planned compound.[5]  They contrast this with the Town's issuance of a building permit to Newman for her undersized lot without first requiring a similar dispensation from the zoning board.

This comparison is inapt; the scale of the two projects was dramatically different.  The Allens' proposed improvements were much more ambitious than those undertaken by Newman, and materially

---

[5]The Allens have stoutly resisted this ultimatum; they have never applied for a variance or special permit.

different projects may be treated differently by zoning or planning boards without raising constitutional concerns. In this instance, it was not irrational for a municipality to conclude that a proposal to relocate an existing residence while expanding the footprint by 90 square feet (as Newman desired) should be treated differently than a proposal involving the construction of a brand-new 3,000-square-foot structure, the substantial expansion of an existing building, and the installation of a large pool and deck area. See Campbell v. Rainbow City, 434 F.3d 1306, 1316 n.8 (11th Cir. 2006) (noting that the degree of non-conformity with a zoning rule is a valid basis for classifying properties as not similarly situated); Barstad v. Murray County, 420 F.3d 880, 886 (8th Cir. 2005) (distinguishing the expansion of an existing use from the construction of a new facility); see also Bell, 367 F.3d at 707-08 (observing that the construction of new structures may be dissimilar from the replacement of existing structures). This is especially true in a community which, like Truro, has a zoning rule that allows for the issuance of a building permit without leave from the zoning board when the building commissioner determines that a proposed change will "not increase the nature or extent of the nonconformity." Truro Zoning Bylaw § VII.B.2.[6]

---

[6]The Allens point to correspondence in which the town counsel suggested that even had the Allens proposed a less ambitious project, they would still have been required to seek special permission from the zoning board. The Allens concede, however, that they never submitted a scaled-down proposal. Consequently, we

-13-

We add a coda.   In the land-use context, timing is critical and, thus, can supply an important basis for differential treatment.    Since zoning bylaws, environmental standards, and licensing criteria may change over time, courts must be sensitive to the possibility that differential treatment — especially differential treatment following a time lag — may indicate a change in policy rather than an intent to discriminate.  See Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002). Consequently, the most reliable comparisons are likely to be from roughly the same time frame.

There is reason to think that temporal disparities may be relevant here.  Newman received her building permit in 1998, whereas the Allens were referred to the zoning board in 2002.  Moreover, Landis (also the owner of an undersized lot), constructed a 750-square-foot addition to her home only after obtaining a special permit from the zoning board in 2003.  This chronology weakens the inference that Newman and the Allens are fair congeners.

A second exemplar put forth by the Allens involves the Truro Conservation Commission.  The Commission determined that the Allens' property rests on a coastal dune.  The Allens contrast this

---

need not speculate about what might have happened if they had.  See Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 705 (1st Cir. 1994) (noting that federal courts do not deal in hypothetical questions).

designation with the Town's designation of Newman's abutting property as being located on a coastal bank.[7]

The difference in nomenclature is not inconsequential; the presence of a coastal dune imports stringent environmental safeguards and building restrictions. Among other things, the designation negates a landowner's ability to build on a solid foundation rather than on pilings (a course that the Allens wished to pursue) and adversely affects the landowner's right to install certain types of septic systems.

Once again, the Allens' plaint is without merit. While it is true that the Town allowed Newman to proceed on the basis that her property was situated on a coastal bank and, thus, could be constructed with a crawl-space drainage system rather than on pilings, the Town's subsequent conduct has been consistent with its treatment of the Allens. In particular, the Landis, Sexton, and Perry additions all have been required to employ pilings as opposed to solid foundations. Because the Town's opposition to the Allens' efforts to build on a solid foundation is in no way anomalous or inconsistent, the Allens are not part of a class of one vis-à-vis the "coastal dune" designation.[8] By definition, a class of one is

_____

[7]The district court found this claim to be time-barred, but proceeded to resolve it on the merits. See Cordi-Allen, 2006 WL 2033897, at *6-7. We take no view of the time bar issue, preferring instead to address the merits.

[8]The Allens make much of the fact that the Sextons have been allowed to keep a pre-existing solid retaining wall. We think that

not a class of many.  Cf. Campbell, 434 F.3d at 1317 (explaining that a class of one suit cannot be maintained when similar burdens have been imposed on other individuals).

As a third exemplar, the Allens offer some desultory charges that the Town has gone to a Massachusetts state court to appeal an approval that they received from the Massachusetts Department of Environmental Protection (DEP) regarding a proposed septic system.  They aver that this is an instance of unequal treatment because the Town has not appealed such an approval in any other case.

This is whistling past the graveyard.  The Allens do not offer a shred of evidence to support the allegation of disparate treatment; for aught that appears, there never had been a comparable case.  Given this dearth of evidence, we find that the wrangling over the septic system does not reveal any arbitrary divergence from the Town's conduct toward other similarly situated individuals.[9] See Bell, 367 F.3d at 708 (noting that "speculation and conjecture" will not allow a class of one plaintiff to survive summary judgment).

The Allens' final exemplar involves floats.  They say that the Town refused to license floats designed to extend their

_____

fact is of no moment.  The relevant point of analysis is new home construction.

[9]In any event, the record reflects that the Town has succeeded in persuading the DEP that the approval was granted in error.

-16-

pier despite having licensed such floats for the nearby yacht club. The district court rejected this argument, noting that the Allens' request for licensure, unlike that of the yacht club, had been denied at an earlier time by the DEP and the Army Corp of Engineers. See Cordi-Allen, 2006 WL 2033897, at *8.

On appeal, the Allens have offered no developed argumentation elaborating the claim that they are similarly situated to the yacht club. We could reject their claim on this ground alone. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Here, moreover, the record reflects a wholly rational explanation for the disparate treatment. Thus, the Allens plainly have not carried their burden of demonstrating that they are similarly situated to the yacht club. See Bell, 367 F.3d at 708.

Before concluding our analysis, we add a postscript. At oral argument in this court, the Allens protested that a strict interpretation of the "similarly situated" requirement — an interpretation to which we have adhered in this and earlier cases — would limit class of one land-use claims to circumstances involving attempts to build identical structures on identical parcels. This criticism is unjustified. The test, properly understood, does not demand identicality. It simply requires that class of one plaintiffs demonstrate that their comparators are

similar in relevant respects.  See Barrington Cove, 246 F.3d at 8. The Allens have fallen well short of that mark.

We need go no further.  The Olech class of one suit serves an important but relatively narrow function.  It is not a vehicle for federalizing run-of-the-mine zoning, environmental, and licensing decisions.  In this instance, the Allens — with their eyes wide open — purchased an undersized lot in an ecologically sensitive area.  They could not reasonably have expected to have a free hand in developing the property.  While the record reflects that the Town has not been particularly accommodating, the Allens have not presented probative evidence sufficient to create a genuine issue of material fact as to the existence of disparate treatment between them and other similarly situated persons.  Accordingly, the district court did not err in entering summary judgment for the Town on the equal protection claim.

**Affirmed**.  **Costs shall be taxed in favor of the Town**.