SBT HOLDINGS, LLC; Brian T. Foley; Thomas E. Foley; and Susan B. Foley, Plaintiffs, Appellants,

v.

TOWN OF WESTMINSTER; Town of Westminster Conservation Commission; Lois Luniewicz; Matthew Marro; Karen Murphy; and Seewald, Jankowski & Spencer, P.C., Defendants, Appellees.

No. 08–1512.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 2008.

Decided Nov. 6, 2008.

David N. Dunn with whom Potter Stewart Jr., Law Offices, P.C., was on brief, for appellants.

Nancy Frankel Pelletier with whom David S. Lawless and Robinson Donovan, P.C., were on brief, for appellees.

Before LYNCH, Chief Judge,
TORRUELLA and STAHL, Circuit
Judges.

LYNCH, Chief Judge.

Plaintiffs SBT Holdings, LLC, and its owners, Brian, Thomas, and Susan Foley, undertook a condominium real estate development project in the Town of Westminster, Massachusetts. After delays caused by environmental regulation demands by the Town, plaintiffs sued the Town, the Town of Westminster Conservation Commission, and various individuals. Suit was brought under 42 U.S.C. § 1983 alleging that the defendants, in violation of plaintiffs' equal protection rights, intentionally obstructed the development by taking certain actions, actions which a state court had found to be in violation of state law and in bad faith.

The district court dismissed plaintiffs' complaint for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(6). It held that the complaint failed to specify similarly situated others who were treated differently, a necessary element in an equal protection case. *SBT Holdings, LLC v. Town of Westminster*, 541 F.Supp.2d 405, 413 (D.Mass. 2008). The plaintiffs appeal, and we reverse the dismissal.

I.

The facts are taken from plaintiffs' complaint, accepting as true well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiffs. *See Rucker v. Lee Holding Co.*, 471 F.3d 6, 8 (1st Cir.2006).

A. *Factual Background*

SBT purchased three adjoining, undeveloped lots in the Town of Westminster on June 27, 2003 and obtained building permits to construct duplexes on the property. On September 23, 2003, heavy rainfalls caused environmental damage, overcoming hay bales that SBT had installed on the property to control erosion. On September 24, a member of the Conservation Commission visited the property and instructed SBT to install additional lines of hay bales. SBT complied.

On October 29, 2003, an agent from the Massachusetts Department of Environmental Protection ("DEP") visited the site and determined that the runoff had affected downstream wetlands. On October 31, the DEP issued a Unilateral Administrative Order, which found violations of state environmental laws, including the Massachusetts Wetlands Protection Act, Mass. Gen. Laws ch. 131, § 40, and required SBT to "take every reasonable step" to avoid future violations. The DEP also requested that SBT develop a plan to restore the

impacted areas and prevent future runoff. As a matter of Massachusetts law, once the DEP issued its Order, the DEP had sole jurisdiction to issue remediation orders at the site under its more stringent standard. *See DeGrace v. Conservation Comm'n*, 31 Mass.App.Ct. 132, 575 N.E.2d 373, 375–76 (1991) (noting that, unless a conservation commission proceeds pursuant to a local ordinance or bylaw that is more stringent than state law, the state agency's order supersedes any local action); *see also FIC Homes of Blackstone, Inc. v. Conservation Comm'n*, 41 Mass. App.Ct. 681, 673 N.E.2d 61, 66 (1996).

The Commission was aware of the DEP Order and its contents no later than November 2003. Nevertheless, the Commission did not defer to the state DEP. On November 1, Commission representatives visited the site, ordered SBT to install retaining walls on areas of the property where SBT had planned to install utility lines, and stated that the Commission would issue a cease and desist order if SBT did not comply. On November 25, the Commission issued an Enforcement Order against SBT, citing only the Massachusetts Wetlands Protection Act as its source of authority, the same statute the DEP was enforcing. The Commission knew at the time that the property was already subject to an order from the DEP, which meant the Commission could not, as a matter of state law, issue its independent order.

SBT representatives met with state DEP officials in December 2003 and tentatively agreed to an administrative consent order. SBT and the DEP entered into the consent order on March 15, 2004; the Commission became aware of this consent order no later than the end of May 2004. In May, Matthew Marro, a Commission consultant, visited the site and requested that SBT remove old hay bale lines and

replace them with new ones. Plaintiff Brian Foley informed Marro about the consent order, and stated that the Commission's direction to SBT would result in a violation of the DEP consent order and would subject SBT to enforcement action from the DEP. SBT installed additional hay bale lines rather than replacing the original hay bales.

Notwithstanding the DEP order, the Commission issued a second Enforcement Order, again citing only the state Wetlands Protection Act, on August 25, 2004. The second Enforcement Order included a Cease and Desist Order, which mandated that no further work be performed on the site until a public hearing was held. It also included an order to regulate the work and required that SBT file a Notice of Intent, which under the state Wetlands Protection Act is similar to an application for a building permit, as to its planned remediation work. SBT filed the Notice of Intent.

The Commission held a contentious hearing on September 8, 2004, which was continued to September 29. At the September 29 hearing, the Commission demanded that SBT file yet an additional Notice of Intent by the afternoon of the next day. SBT did not comply.

The Commission issued another Enforcement Order on September 30, 2004, requiring SBT to cease and desist work on the property. Again, that order cited only to the state law. The Commission did not serve the order on any of the plaintiffs; SBT learned of the Commission's issuance of this order from a newspaper article. After the story was published, SBT's lenders learned of the order and cut off funding for the project. The individual plaintiffs were forced to spend their own funds on the project, which experienced delays and cost overruns.

SBT filed a state suit in Worcester Superior Court on October 6, 2004 against the Town, Lois Luniewicz, the head of the Commission, Marro, and several town officials. The complaint alleged state law claims of interference with contractual relations, interference with use and enjoyment of personal property, abuse of process, trespass, and interference with prospective business relations. The parties differ over the circumstances under which this suit terminated.

On December 7, 2004, a DEP representative visited the site; both Brian Foley and the Commission consultant Marro were present. The DEP representative stated, in Marro's presence, "that the site was stable and acceptable to the DEP."

Despite the Commission's knowing the DEP found the site acceptable, the Commission sued SBT in Worcester Superior Court on February 1, 2005, alleging SBT was in violation of the state Wetlands Protection Act and that SBT had failed to comply with the Commission's orders. The Commission sought a permanent injunction to require SBT to cease all operations on the property until it complied with the Commission's orders. At the time, the Commission knew that under Massachusetts law, the existence of the DEP consent order barred it from taking this action. The court issued a Temporary Restraining Order on February 9, 2005.

Despite a claim the Commission lacked jurisdiction over the site, the Town sought and obtained a preliminary injunction that continued the terms of the TRO. Town counsel informed the members of the Commission of the injunction on March 2, 2006. In response, Luniewicz sent a reply by email that stated: "I'd say-good job! **We've heard that Mr. Foley is financial-ly insolvent and no longer connected to the project, which is why we started this process in the first place!** If that's true, how will we get what we need done from him … ?" (Emphasis added.)

SBT moved to dismiss the Commission's state suit on April 13, 2006. After the Commission was served with the motion, defendant Karen Murphy, the Town Coordinator, withheld a Certificate of Use and Occupancy that the Building Commissioner had issued for units which SBT had offered for sale. Obtaining the certificate had been a precondition for the contracts of sale.

The Worcester Superior Court granted SBT's motion to dismiss on June 21, 2006. The court awarded SBT its costs and attorneys' fees, stating that the Commission's claim against SBT was "frivolous and wholly insubstantial," in part because the Commission "knew that SBT was subject to the DEP's Consent Order prior to the time it filed its complaint." *Westminster Conservation Comm'n v. SBT Holdings, LLC,* No. 050183, 2006 WL 4114310, at *2 (Mass.Super.Ct. Dec. 22, 2006). The Appeals Court of Massachusetts affirmed the award. *Westminster Conservation Comm'n v. SBT Holdings, LLC,* No. 07–P–497, 2008 WL 3925641, at *2 (Mass.App.Ct. Aug.28, 2008); *see also Hamilton v. Conservation Comm'n,* 12 Mass.App.Ct. 359, 425 N.E.2d 358, 366 (1981) (where town acts based on state Wetlands Protection Act, it is the state agency which has final authority; town may impose stricter liability by ordinance or by law, and even then, only in a fashion consistent with the Act).

## B. *SBT's Suit in Federal Court*

On April 19, 2007, plaintiffs filed this suit in federal court.[1] The complaint as-

---

1. The complaint named the Town and the Commission and also named Luniewicz, Marro, Karen Murphy, the Town Coordinator,

serted, under 42 U.S.C. § 1983, an equal protection claim, as well as several state-law claims. The equal protection claim was styled as a "class of one" claim, that is, a claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *Cordi-Allen v. Conlon*, 494 F.3d 245, 250 (1st Cir.2007). The complaint alleged that the defendants had "intentionally and wrong-fully singled out Plaintiffs for adverse treatment" and that the defendants "took . . . adverse actions against the Plaintiffs, though the Defendants did not take action against others similarly situated." Complaint paras. 153–54, *SBT Holdings*, 541 F.Supp.2d 405 (No. 07–40116–FDS).

The allegations about "others similarly situated" focused on the individuals who had purchased the developed duplexes on the property from SBT. The complaint stated that the Town had been informed that it could proceed against the new owners to obtain remediation, but that "[s]ig-nificantly, [the Commission] has never tak-en any enforcement action against the [new] owners." *Id.* ¶. 143. In addition, the complaint referred to the owner of land abutting the property, noting that SBT was forced to construct an engineered swale to prevent erosion "as a result of clearing done by the uphill abutter" and that "[d]espite specific acknowledgement [sic] of this fact, [the Commission] never took any enforcement action against nor required any notice of intent to be filed by that abutter." *Id.* ¶. 123. It also alleged that the difference in treatment had no

rational basis and that it was instead due to "malicious and bad faith intent" to in-jure the plaintiffs. *Id.* paras. 155–56.

Several defendants filed a motion to dis-miss or, in the alternative, for summary judgment. The court dismissed the case, finding that the allegations in the com-plaint failed to establish a plausible § 1983 equal protection violation because the plaintiffs failed to allege adequately that they were "treated differently from 'others similarly situated . . . based on impermissi-ble considerations.'" *SBT Holdings*, 541 F.Supp.2d at 412 (omission in original) (quoting *Clark v. Boscher*, 514 F.3d 107, 114 (1st Cir.2008)). The court stated that "[t]he only possible reference in the com-plaint to a 'similarly situated' third party" was the allegation that defendants had "'never taken any action against the own-ers of [the] Property who purchased it from SBT.'" *Id.* at 413 n. 5 (alteration in original) (quoting Complaint ¶. 143). The court found this reference insufficient be-cause the complaint did not reveal whether the plaintiffs had even sold the property and did not allege either that "the environ-mental condition of the property remained unchanged . . ., or that the new owners did not undertake site restoration." *Id.*

The court declined to exercise supple-mental jurisdiction over the remaining state law claims, *see* 28 U.S.C. § 1367(c)(3), and dismissed claims against the remaining defendants as well.[2]

## II.

This court reviews a dismissal under Fed.R.Civ.P. 12(b)(6) de novo. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 533 F.3d 1, 3 (1st Cir. 2008).

---

and the law firm of Seewald, Jankowski & Spencer, P.C., the Town's counsel.

2. The district court held that Seewald, Jan-kowski & Spencer was absolutely immune to suit as a town counsel. Plaintiffs do not challenge this determination.

Plaintiffs' initial argument is that the court improperly applied a heightened pleading standard to their civil rights complaint. As we stated in *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir.2004), "[a]ll civil rights actions are subject to [Fed.R.Civ.P.] 8(a)'s notice pleading regime." *Id.* at 67.

The district court here stated it was applying the standard for evaluating the sufficiency of pleading an equal protection claim it thought was set out in *Barrington Cove Ltd. Partnership v. Rhode Island Housing & Mortgage Finance Corp.*, 246 F.3d 1, 8 (1st Cir.2001). The question of whether the court in fact used a heightened pleading standard is hypothetical; whether it did or not, plaintiffs' claim survives the pleading standard the Supreme Court articulated in *Olech*. *See Olech*, 528 U.S. at 565, 120 S.Ct. 1073; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967–69, 167 L.Ed.2d 929 (2007).

■ A claim for a "class of one" equal protection violation "is cognizable when— and only when—a 'plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Cordi–Allen*, 494 F.3d at 250 (quoting *Olech*, 528 U.S. at 564, 120 S.Ct. 1073); *see also Barrington Cove*, 246 F.3d at 7 ("[T]o establish its claim, ... [a plaintiff must] allege facts indicating that, 'compared with others *similarly situated*, [it] was selectively treated ... based on impermissible considerations such as ... malicious or *bad faith* intent to injure a person.'") (second omission in original) (emphasis in original) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir.1995)).

■ To determine whether two or more entities are "similarly situated," we ask "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated," *Barrington Cove*, 246 F.3d at 8 (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989)). "Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples." *Id.* (quoting *Dartmouth Review*, 889 F.2d at 19). Here, the relevant comparison is between the plaintiffs, who developed the condominiums, and the purchasers of the newly developed condominiums, who were the new owners of the property.[3]

The defendants rely heavily on the dismissal of plaintiff's complaint in *Barrington Cove*, but the allegations in that complaint were very different from these. In contrast to the situation in *Barrington Cove*, the complaint here does not itself set forth factual allegations that show the defendants had "an adequate basis ... for treating the [plaintiffs] differently." *Id.* at 9. In *Barrington Cove*, the complaint included details, such as the fact that the plaintiff began construction on a low-income housing project before funding was entirely secure, that would have provided the governmental defendant with a rational basis for the difference in treatment, and thus with a complete defense to a claim for disparate treatment. *Id.*; *see also Cordi–Allen*, 494 F.3d at 250. Here, by contrast, the complaint does not disclose any facts that would have served as a rational basis for the difference in treatment. To the contrary, the complaint states:

---

**3.** Because the new owners are comparators, we do not reach the question of whether the owner of the abutting land who caused environmental damage is also a comparator.

[I]n [correspondence dated April 4, 2006], Defendant [Seewald, Jankowski & Spencer] advised Defendants Marro, Murphy and Luniewicz that if the Permanent Injunction Litigation was dismissed, *the Town could obtain the relief it wanted relating to compliance with the Wetlands Protection Act by bringing an enforcement action against the new owners of the property.* Significantly, the Defendant Conservation Commission has never taken any enforcement action against the owners of [the] Property who purchased it from Plaintiff SBT.

Complaint ¶. 143 (emphasis added). In essence, the complaint alleges that those who purchased the developed condominiums during the relevant periods at least in part assumed the plaintiffs' prior ownership interests but the Town never attempted to apply its ongoing environmental enforcement provisions against the new owners.

The defendants argue that the complaint fails to establish similarity because it does not show that the "subsequent purchasers were subject to the same or similar statutory and regulatory requirements as the developer" or that the property remained in the same state. That argument ignores the rule that we draw all rational inferences from the facts alleged in favor of the plaintiffs. We must assume from the facts pled that the environmental obligations ran with the land. *See* Mass. Gen. Laws. ch. 131, § 40 ("Any person who purchases, inherits or otherwise acquires real estate upon which work has been done in violation of ... any order issued under [the Wetlands Protection Act] shall forthwith comply with any such order....."). The purchasers were, as a result, subject to the same environmental obligations. Nonetheless, the Commission selectively chose not to enforce those obligations against those who acquired the real estate.

In addition, the complaint more than adequately alleges that defendants' actions were motivated by "malicious or bad faith intent to injure."[4] *Barrington Cove*, 246 F.3d at 7 (emphasis omitted) (quoting *Rubinovitz*, 60 F.3d at 910). The correspondence plaintiffs obtained during the permanent injunction litigation demonstrates that the defendants' actions, "including but not limited to bringing the Permanent Injunction Action, were utterly unjustified, contrary to law and out of malice and bad intent." Complaint paras. 133–34. The complaint cited Luniewicz's email and alleged that the correspondence was "never questioned by any Defendant as improper or not reflecting the true reason why the actions ... were instituted and pursued." *Id.* ¶. 136. It also alleged that the lack of enforcement action against the new owners led to the "inescapable conclusion" that the Commission's "primary goal in taking action against the Plaintiffs was ... to render the Plaintiffs financially insolvent." *Id.* ¶. 143.

Defendants argue that the email can only establish that Luniewicz alone acted from impermissible motives and that this motive cannot be ascribed to the Town or to the Commission. A reasonable inference is that Luniewicz, as head of the Commission, either spoke for the Commission or with knowledge of why the Commission acted as it did.

The district court erred in dismissing the plaintiffs' complaint for failure to state a claim.

---

4. We do not need to address *Cordi–Allen*'s language that, "the degree of similarity required may be relaxed somewhat if the plaintiff has presented evidence of 'personal malice and 'bad faith' retaliation,'" *Cordi–Allen*, 494 F.3d at 251 n. 4 (quoting *Tapalian v. Tusino*, 377 F.3d 1, 7 (1st Cir.2004)). Even without relaxing the standard, the degree of similarity pled suffices.

### III.

■ Defendants present alternative arguments for dismissal. We may affirm a judgment of dismissal "on any independently sufficient ground." *Badillo–Santiago v. Naveira–Merly*, 378 F.3d 1, 5 (1st Cir.2004). Defendants argue the plaintiffs' federal complaint is barred by the doctrine of res judicata.

■ The burden is on the defendants to establish the affirmative defense of res judicata. *See* Fed.R.Civ.P. 8(c)(1); 5 Wright & Miller, *Federal Practice & Procedure* § 1270 (3d ed.2004). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information,[5] and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir.2004). The facts provided fail to establish res judicata. *See Puerto Ricans for P.R. Party v. Dalmau*, 544 F.3d 58, 62–67 (1st Cir.2008).

■ We look to Massachusetts res judicata principles. Federal courts "must give preclusive effect to state court judgments in accordance with state law." *Mulrain v. Bd. of Selectmen*, 944 F.2d 23, 25 (1st Cir.1991). The term res judicata "includes both claim preclusion and issue preclusion," *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 832 N.E.2d 628, 634 (2005), and "makes a valid, final judg-

ment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Id.* (quoting *O'Neill v. City Manager*, 428 Mass. 257, 700 N.E.2d 530, 532 (1998)) (internal quotation mark omitted). Defendants must establish three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." *Id.* (quoting *DaLuz v. Dep't of Corr.*, 434 Mass. 40, 746 N.E.2d 501, 505 (2001)) (internal quotation marks omitted). We look to the suit which SBT filed.[6]

Defendants have failed to establish that plaintiffs' federal complaint contains allegations that are "virtually identical" to the allegations made in the suit SBT filed nor even that the federal claims could have been brought at the time. *See Puerto Ricans for P.R. Party*, 544 F.3d 58, 66. Plaintiffs' equal protection claim is based on allegations they were treated differently than the new owners, and on allegations of malice and bad faith. Information such as Luniewicz's email, which was sent on March 3, 2006, was not available to the plaintiffs until after the state suit effectively ended. The complaint also alleges that although the defendants were made aware in April 2006 that they could proceed against the new owners, they failed to do so. These allegations could not have been made earlier, before the suit that SBT filed in Worcester Superior Court effectively ended on May 18, 2005.

---

**5.** Here, defendants failed to provide certified copies of all the pertinent state court documents. It is not clear whether these uncertified copies are subject to judicial notice, but even if they could be, defendants have still not met their burden.

**6.** Defendants incorrectly also argue from the .suit the Town filed. Unless a defendant is subject to a compulsory counterclaim rule, the defendant "should be left free to assert his

claims in a court and at a time of his own choosing." 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4414, at 343 (2d ed.2002). Defendants offer no arguments as to why the federal claims here should be viewed as compulsory counterclaims in the Town's suit. Indeed, as we recount later, certain events which helped give rise to the federal claims did not occur until later.

In addition, the evidence does not establish [7] there has been a final adjudication on the merits in SBT's suit.[8]

## IV.

■ Defendants also argue that all claims by plaintiffs Brian, Thomas, and Susan Foley must be dismissed for lack of standing because all the claims alleged in the complaint belong to SBT, not to the individual plaintiffs. They say the individual plaintiffs did not have dealings with the defendants, and that the alleged wrongful conduct was directed to SBT alone. This argument need not detain us long. First, it would not lead to dismissal of the whole suit in any event.

■ Second, the individual plaintiffs have standing. A plaintiff must have Article III standing. *Town of Winthrop v.*

*FAA*, 535 F.3d 1, 6 (1st Cir.2008). To proceed, he or she must "adequately establish: (1) an injury in fact . . .; (2) causation . . .; and (3) redressability." *Sprint Commc'ns Co. v. APCC Servs., Inc.,* ——— U.S. ———, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008). The individual plaintiffs have done so here. The complaint alleges that as a result of the September 2004 Enforcement Order, SBT's lender cut off funding and, "[a]s a result, Plaintiffs Brian Foley, Thomas Foley and Susan Foley were required to devote substantial personal funds" to the project. Complaint, ¶. 81. The plaintiffs also allege that defendants' action caused cost overruns and delays, causing the individual plaintiffs "direct and consequential financial harm." *Id.* paras. 82–83. Further, as the plaintiffs argue, Luniewicz's email demonstrates

7. On March 16, 2005, the superior court entered an Order for Entry of Dismissal Nisi, noting that the matter was reported settled and ordering that an agreement for judgment of stipulation of dismissal be filed by April 15, 2005 and that, if such an agreement were not filed, a judgment of dismissal without prejudice would be entered. On May 18, the court ordered the action dismissed without prejudice, since no stipulation of dismissal had been filed. The docket also stated that the court did receive, on May 18, a "stipulation of dismissal *with* prejudice & without costs." (Emphasis added.) A final entry, added on July 26, 2007, stated "judgment vacated— stipulation of dismissal having been filed."

Plaintiffs moved to correct the docket entry or to amend judgment, and at the court's request, defendants filed a cross-motion to vacate the judgment of dismissal nisi and substitute a stipulation of dismissal. On December 7, 2007, the court denied the defendants' motion, concluding that "[t]here remain[ed] a genuine issue of fact as to whether all parties . . . intended to have this case disposed of by a dismissal with prejudice."

8. For this reason, defendants' argument that judicial estoppel bars the plaintiffs from arguing against res judicata fails. Judicial estoppel "prevents a party from asserting a claim

in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." 18 Moore et al., *Moore's Federal Practice* § 134.30 (3d ed.2008); *see also New Hampshire v. Maine,* 532 U.S. 742, 749– 50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). For the doctrine to attach, "the responsible party must have succeeded in persuading a court to accept its prior position." *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir.2004). At this point in the litigation, the record is not clear that the court accepted SBT's prior position—that the state suit was dismissed with prejudice.

Defendants' equitable estoppel argument also fails. Defendants assert that they reasonably relied on plaintiffs' representation that a stipulation of dismissal with prejudice had been filed. However, for equitable estoppel to attach, defendants must show that at the time, they "did not know nor should [they] have known" that plaintiffs' conduct was misleading. *Benitez–Pons v. Puerto Rico,* 136 F.3d 54, 63 (1st Cir.1998) (quoting *Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)). Here, the record shows that the state court's clerk sent copies of the dismissal *with* prejudice to all parties and that defendants could have learned the truth by exercising reasonable diligence. *See id.*

that the malice and bad faith alleged in the complaint were directed at the individual plaintiffs. While the defendants proceeded only against SBT, they allegedly did so to achieve their alleged motive of bankrupting the Foleys.

Finally, defendants argue that the Commission is not a proper party to this suit. The parties have assumed this question is governed by Fed.R.Civ.P. 17(b)(3), under which state law determines a defendant's capacity to be sued save for an exception which the parties have not addressed. Defendants assert that Massachusetts law provides "no authority to suggest that a conservation commission is a proper party to a claim for money damages." They argue that the plaintiffs can only bring claims against the municipality or against the individual members of the Commission.

Defendants' argument overlooks the relevant Massachusetts law. Since at least 1981, Massachusetts courts have recognized that conservation commissions are amenable to suit. *See Hamilton*, 425 N.E.2d at 366 (noting that local authorities may impose by bylaw or ordinance wetlands protections that are more stringent than state standards under section 40, but that "where a taking is caused by the accomplishment of that purpose, it is the local authority which would bear the liability"). In addition, there are numerous cases where conservation commissions are parties and Massachusetts state courts dismissed claims for damages against them, but not on grounds they are not amenable to suit. *See, e.g., Giovanella v. Conservation Comm'n*, 447 Mass. 720, 857 N.E.2d 451 (2006) (affirming denial of claim for damages on the merits); *First High St. Trust v. Town of Hingham*, No. 03–P–681, 2004 WL 615050 (Mass.App.Ct. Mar.29, 2004) (statute of limitations). Such actions have not been limited to takings claims

and have included actions for damages. *See Kennie v. Natural Res. Dep't*, 69 Mass.App.Ct. 158, 866 N.E.2d 983 (2007).

### V.

Dismissal of plaintiffs' complaint cannot be justified on grounds that the complaint failed to state a claim or on the alternate grounds asserted. We *reverse* the judgment of dismissal of the district court and remand for further proceedings consistent with this opinion.

*So ordered.*