**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 12-1347

MIDDLEBOROUGH VETERANS' OUTREACH CENTER, INC.,

Plaintiff, Appellant,

v.

PAUL J. PROVENCHER ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin* and Stahl, Circuit Judges.

Adam M. Bond for appellant.
Deidre Brennan Regan, with whom Leonard H. Kesten and Brody,
Hardoon, Perkins & Kesten, LLP were on brief, for appellee.

January 11, 2013

---

*      Judge Boudin heard oral argument in this matter, and participated in the semble, but he did not participate in the issuance of the panel's opinion in this case. The remaining two panelists therefore issued the opinion pursuant to 28 U.S.C. § 46(d).

**STAHL**, **Circuit Judge**.  In 2010, appellee Paul Provencher, the Veterans' Agent for the Town of Middleborough, Massachusetts ("the Town"), wrote letters to local newspapers, advising area residents to exercise caution before donating to veterans' charities that use telemarketing or direct solicitation, and naming appellant Middleborough Veterans' Outreach Center ("MVOC") and one other charity.  MVOC claims that, as a result of these letters, it has experienced difficulty fundraising.  In response, MVOC sued, alleging that Provencher unjustly singled it out for official condemnation in violation of the Equal Protection Clause, U.S. Const. amend XIV, § 1, cl. 4.  The district court granted summary judgment for Provencher and the Town, and MVOC now appeals.  We affirm.

## I.  Facts & Background

MVOC, which is based in Middleborough, is a tax-exempt charitable organization under 26 U.S.C. § 501(c)(3).  It provides services to local veterans, including transportation and counseling.  MVOC's President and CEO, Joseph Thomas, is the organization's "sole service provider" and the person primarily responsible for soliciting donations.

Provencher, in his capacity as Middleborough Veterans' Agent, is tasked with (among other things) furnishing information, advice, and assistance to veterans to enable them to procure benefits related to employment, vocational and educational

-2-

opportunities, hospitalization, and medical care.  <u>See</u> 108 Mass. Code Regs. 12.04 (defining duties of municipal veterans' agents).

On September 26, 2010, Provencher sent the Taunton Daily Gazette a letter, which he asked the newspaper to publish, advising the public to donate to veterans' charities that "will use all of your donation to help out the causes that are important to you." The letter explained that MVOC and another charity, Bay State Vietnam Veterans, had recently been telemarketing and soliciting in the area, and that Provencher did not "support" any charities that use "telemarketing or direct contact solicitation except for the veterans' organizations that do their annual poppy or forget-me-not drives" (which were not named).  The letter suggested that citizens check with the Commonwealth's Attorney General's Office in order to determine what percentage of donations each organization used for veterans' services, as opposed to expenses.  It closed by inviting readers to call Provencher for further guidance, and was signed "Paul Provencher, Director of Veterans' Services, Middleborough, MA."

The Taunton Daily Gazette did not publish this letter, but the Middleborough Gazette published an almost identical letter from Provencher a few days later, under the headline "Letters to the Editor."[1]  Further, the Taunton Daily Gazette subsequently ran

---

[1]     A similar letter from Provencher appeared on the website www.southcoasttoday.com around the same time; this one did not name MVOC, focusing instead on Bay State Vietnam Veterans.

an article based on Provencher's letters, headlined "Veterans services director in Middleboro says telemarketers working for veterans charities invoked his name." The article named MVOC as one of two groups implicated "in a 'ploy' that involves telemarketers telling potential donors that they work with [Provencher] and his office." The article also included a comment from Thomas on behalf of MVOC, in which he denied using telemarketing or "cold call solicit[ing] door-to-door." The article reported that Provencher said that the purpose of his letters "was to point out that many nonprofits say they are helping veterans but have high administrative costs."

After the letters were published, MVOC filed suit against Provencher (in his individual and official capacities) and the Town under 42 U.S.C. § 1983, claiming that Provencher's actions had violated the Equal Protection Clause. MVOC asserted that the letters and the article had impeded its fundraising efforts. For example, the Middleborough Council on Aging withdrew permission for MVOC to use the Council on Aging to sell raffle tickets, citing concerns "about fundraisers and the amount of money that goes into administration versus direct help to veterans."[2] MVOC also contended that Provencher's actions violated the Anti-Aid Amendment to the Massachusetts Constitution, Mass. Const. amend. art. XVIII,

---

[2] The Council on Aging and its director were initially named as defendants below, but the claims against them were subsequently dismissed via stipulation.

§ 2, and Mass. Gen. Laws, ch. 268A, § 23(b)(2), although it offered this argument in an attempt to establish that Provencher's actions lacked a rational justification, not as the basis for additional claims.

The district court granted summary judgment for Provencher and the Town. Middleborough Veterans' Outreach Ctr., Inc. v. Provencher, No. 11-cv-10688-JLT, 2012 WL 692878 (D. Mass. Feb. 29, 2012). The court explained that a class-of-one equal protection claim (i.e., an equal protection claim not based on membership in a class or group) requires a plaintiff to show that she has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at *2 (citation and internal quotation marks omitted). MVOC failed to make that showing; the district court found that MVOC was not similarly situated to the other charities alluded to in Provencher's letters because those charities used a much higher percentage of their donations to fund veterans' services. Consequently, with respect to the distinction apparently created by Provencher's letters -- charities with high overheads versus those with low overheads -- MVOC was not similar to its putative comparators. See id. at *3-4. On this rationale, the district court ruled for Provencher and the Town. MVOC now appeals that judgment.

## II.  Analysis

We review a grant of summary judgment de novo, Baker v. St. Paul Travelers Ins. Co., 670 F.3d 119, 125 (1st Cir. 2012), and will affirm if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, see Fed. R. Civ. P. 56(a).  "Where, as here, we are presented with cross-motions for summary judgment, we 'must view each motion, separately,' in the light most favorable to the non-moving party, and draw all reasonable inferences in that party's favor." OneBeacon Am. Ins. Co. v. Commercial Union Assur. Co. of Can., 684 F.3d 237, 241 (1st Cir. 2012) (quoting Estate of Hevia v. Portrio Corp., 602 F.3d 34, 40 (1st Cir. 2010)).

In support of its equal protection claim, MVOC attempts to establish that Provencher's letters created a "classification" that distinguishes between two "groups" of charities: those that use "professional solicitors" to raise money and those that do not. The letters themselves, however, make no reference to professional solicitors; they discuss only the use of particular solicitation methods (telemarketing and direct contact at retail stores).  In any event, we think the classification issue is beside the point. MVOC's core complaint is not that Provencher irrationally distinguished between charities that use solicitor organizations and those that do not, but rather that he unjustly "denigrated" MVOC while simultaneously "endorsing" other charities that, in

MVOC's eyes, are indistinguishable from itself in the relevant respects: they are also private, local charitable organizations that provide free veterans' services and do not employ professional solicitors. To the extent that this allegation raises an equal protection claim at all, it fits best within the class-of-one rubric, under which an equal protection plaintiff may press a claim "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," even where she does "not [show] membership in a class or group." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam).[3]

Before we turn to the merits of MVOC's class-of-one claim, we note an argument that the defendants raise in passing: that, even if Provencher did irrationally treat MVOC differently from other, similarly situated charities, no class-of-one claim would lie here. We are not unsympathetic to this argument. As we have explained before, class-of-one suits serve "an important but relatively narrow function." Cordi-Allen v. Conlon, 494 F.3d 245,

---

[3] Some, but not all, of our post-Olech decisions have said that a class-of-one plaintiff must show not only irrational disparate treatment but also malice, ill will, or some other motivating animus. Compare Clark v. Boscher, 514 F.3d 107, 114 (1st Cir. 2008), and Tapalian v. Tusino, 377 F.3d 1, 5-6 (1st Cir. 2004), with Toledo v. Sánchez, 454 F.3d 24, 34 (1st Cir. 2006), and Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002). Here, we need not address this requirement because MVOC's claim would fail regardless. See Cordi-Allen v. Conlon, 494 F.3d 245, 250 n.3 (1st Cir. 2007).

255 (1st Cir. 2007). Properly focused, they vindicate the basic equal protection principle of "uniform treatment of persons standing in the same relation to the governmental action questioned or challenged." Reynolds v. Sims, 377 U.S. 533, 565 (1964). But they should not transform every ordinary misstep by a local official into a violation of the federal Constitution. See Cordi-Allen, 494 F.3d at 255; see also Olech, 528 U.S. at 565 (Breyer, J., concurring). Further, certain government actions are ill-suited to judicial oversight under the class-of-one formula. See Engquist v. Or. Dep't of Agric., 553 U.S. 591, 602 (2008) (holding the class-of-one doctrine inapplicable to government employment decisions and explaining that a "significant" consideration in Olech and its forebears "was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed").

Consequently, there may be considerable merit to the suggestion that, on this record, the Equal Protection Clause does not reach Provencher's conduct, which is quite unlike the "unfavorable zoning decisions, withholding of permits, and selective regulatory enforcement" that have served as the basis for successful class-of-one claims. Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1216 (10th Cir. 2011) (internal citations omitted). Even so, we have consistently declined to address arguments that are, like this one, not fully developed. See United States v.

Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Thus, we do not take up this contention. Nor need we; as the district court recognized, MVOC's claim fails even on its own terms.

A basic requirement of any class-of-one claim is that the plaintiff must be, with respect to the challenged government action, situated similarly to persons who were treated differently. See Olech, 528 U.S. at 564; SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 34 (1st Cir. 2008). Our precedents "place the burden on the plaintiff . . . to show such identity of entities and circumstances to a high degree." Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n, 610 F.3d 8, 16 (1st Cir. 2010). MVOC does not clear this threshold.

The district court concluded, and the parties appear to agree, that MVOC's relevant comparators are the charities identified in this sentence of Provencher's letters: "I . . . do not support any organization that uses telemarketing or direct contact solicitation except for the veterans' organizations that do their annual poppy or forget-me-not drives." Although not named in the letters, these charities are identified by the parties as the Disabled American Veterans, the Veterans of Foreign Wars, and the American Legion. Unlike MVOC, these charities were not the subject of Provencher's warning. The question thus becomes what traits MVOC must share with these charities to be similarly situated with regard to Provencher's disclaimer of "support."

As to that question, we think that a fair reading of the letters, in toto, reveals that the relevant characteristic is the amount of money a charity uses directly for veterans' services, as opposed to administration or fundraising. The letters' stated "purpose . . . is to ask [readers] to make donations to local organizations . . . that will use all of [the] donation[s] to help out the causes that are important to [them]." Provencher warned readers that "[t]here are a lot of administrative costs associated with telemarketing and direct contact solicitation and more than likely less than 20% of the money raised helps the cause you are being solicited for." MVOC contends that, as used here, "the cause" must mean "the charity," which would make MVOC similarly situated to any charity that (like MVOC) eschews professional solicitors, because 100% of donations would go to "the cause . . . solicited for." In a vacuum, that reading might be plausible, but we think it does not account for the context of this language's use. Rather, we think that Provencher's overarching concern, as evinced by his invitation to readers to investigate how much money a charity uses for "actually assisting veterans," was steering donations toward charities "that will use all of [the] donation[s] to help" veterans. Consequently, as the district court put it, for MVOC to establish that it is relevantly similar to the other charities alluded to in the letters, "it must show that a similar percentage of its charitable donations [is] used to aid veterans,

as opposed to being used for administrative costs or overhead." 2012 WL 692878, at *3.

This, MVOC cannot do. It has offered no evidence showing the proportion of total revenue used for direct veterans' aid by the other charities. Instead, it has merely objected to the defendants' evidence on this point (gleaned from the website www.charitynavigator.com) as unauthenticated and incompetent.[4] But, as the party bearing the burden of proof on the elements of its class-of-one claim, MVOC cannot fend off, much less earn, summary judgment simply by attempting to disqualify the defendants' evidence, where the result would be no evidence probative of similarity. See Nebraska v. Wyoming, 507 U.S. 584, 590 (1993); Plumley v. S. Container, Inc., 303 F.3d 364, 368 (1st Cir. 2002); cf. Srail v. Vill. of Lisle, Ill., 588 F.3d 940, 945 (7th Cir. 2009) (noting that the class-of-one doctrine's similarly situated requirement "necessarily requires a challenger to introduce evidence of similarly situated persons"). Consequently, even if MVOC is right that we may not consider the defendants' evidence, the result is "a complete failure of proof concerning an essential element of" MVOC's class-of-one claim. See Celotex Corp. v.

---

[4] As the district court described, the defendants' evidence showed that the other charities put a much higher proportion of their income toward direct veterans' aid than does MVOC, which had only 13.5% of its total contributions left for direct aid after paying its expenses and Thomas's salary in 2009. See 2012 WL 692878, at *4.

<u>Catrett</u>, 477 U.S. 317, 322 (1986).  Accordingly, the district court properly granted summary judgment for the defendants.[5]

### III.  Conclusion

For the foregoing reasons, we <u>affirm</u>.

---

[5] Because MVOC has failed to establish a necessary element of its class-of-one claim, we need not address whether Provencher would be entitled to qualified immunity, or whether the Town could be held liable for his actions under <u>Monell</u> v. <u>New York City Department of Social Services</u>, 436 U.S. 658 (1978).