**Charles FREEMAN and Daniella Freeman, Plaintiffs,**

v.

**TOWN OF HUDSON, Hudson Police Department, Hudson Conservation Committee, Massachusetts Department of Environmental Protection, Thomas Crippen, David Stephens, Richard Braga, Debbie Craig, Paul Byrne, David Esteves, Jeff Wood, Thomas Thorburn and Joseph Bellino, Defendants.**

**Civil No. 11–10432–NMG.**

United States District Court, D. Massachusetts.

March 15, 2012.

Barry A. Bachrach, The Law Office of Barry Bachrach, Leicester, MA, for Plaintiffs.

Jonathan M. Silverstein, Brian J. Winner, Janelle M. Austin, Kopelman & Paige, PC, Boston, MA, for Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

On February 16, 2012, Magistrate Judge Jennifer Boal issued a Report and Recommendation ("R & R") recommending that this Court dismiss the plaintiffs' federal claims and decline to exercise supplemental jurisdiction over the pendant state-law claims. This Court finds the R & R to be thorough and well-reasoned and, accordingly, accepts and adopts it in its entirety. This supplemental memorandum responds to the parties' several objections to the R & R.

### I. *Background*

The Complaint, which consists of 191 paragraphs and is supported by 82 pages of exhibits, alleges state and federal claims against the Town of Hudson, municipal and state agencies and nine employees of those agencies. According to the plaintiffs, the defendants are liable under 42 U.S.C. § 1983 for violating their federal constitutional rights to equal protection and substantive due process.

Plaintiffs' "class of one" equal protection claims are predicated on allegations that the defendants treated them differently than their similarly situated neighbors and townspeople with the intent to cause them economic harm and emotional distress. According to the plaintiffs, conservation laws, zoning ordinances and permit regulations were strictly enforced against them but ignored when their neighbors engaged in similar conduct. When plaintiffs built a treehouse on part of their property desig-

nated as conversation land, they were ordered to remove it but when neighbors built their swimming pool within a conservation buffer zone and planted trees without a permit, the Hudson Conservation Commission took no action. Similarly, local ordinances prohibiting signs on personal property and the installation of video surveillance systems without a license were enforced against the plaintiffs but only rarely, to the plaintiffs' knowledge, against others.

Plaintiffs' substantive due process claims are based on alleged abuses of authority and conscience-shocking conduct of certain members of the Hudson Police Department and Conservation Commission. Plaintiffs contend that the Conservation Commission arbitrarily rejected proposed improvements to their property and threatened to levy gratuitous fines against them. Moreover, they aver that certain Hudson police officers conspired to frame Mr. Freeman for a crime he did not commit. Although the criminal complaint was later dismissed, Mr. Freeman claims that it damaged his reputation and caused him considerable distress.

Plaintiffs have also included state-law claims against the defendants for abuse of process, intentional infliction of emotional distress, defamation and violation of the Massachusetts Civil Rights Act.

All in all, plaintiffs portray a concerted effort by Hudson citizens, officials and agencies to make their lives miserable.

## II. *Analysis*

The Court declines the parties' invitations to rehearse the various and sundry legal issues already capably addressed by Magistrate Judge Boal. Rather than delve into their specific objections, many of which have been anticipated by the R & R, the Court will respond more conceptually.

To begin, the Court wishes to dispel plaintiffs' apparent impression that their federal claims are being dismissed because the underlying allegations are not serious enough to merit further attention.[1] By concluding that plaintiffs' federal claims are not of a constitutional dimension, the Court does not pass judgment on the gravity or credibility of the plaintiffs' allegations, nor does it condone the defendants' alleged conduct which, if true, is deplorable. The Court merely acknowledges that the alleged mistreatment, while potentially actionable under state law, does not give rise to a violation of the United States Constitution.

The First Circuit Court of Appeals has made it very clear that officials of state and local agencies, such as the Massachusetts Department of Environmental Protection and the Hudson Conservation Commission, do not violate the Equal Protection or Due Process Clauses even when their actions are misguided, ill-intentioned or made in violation of their statutory authority. *See Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44–45 (1st Cir.1992) ("[W]e have consistently held that the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes."); *Cordi–Allen v. Conlon*, 494 F.3d 245, 250–55 (1st Cir. 2007) ("The 'similarly situated' requirement must be enforced with particular rigor in the land-use context because zoning decisions will often, perhaps almost always, treat one landowner differently from another."); *Amsden v. Moran*, 904 F.2d 748, 757–58 (1st Cir.1990) ("[S]ection 1983

---

1. *See* Pl.'s Obj. at 6: "Suffice it to say that our society has truly sunk into a sad state of affairs if police knowingly frame an innocent man, file false police reports, and create false evidence while pursuing this charade for 18 months against the innocent, and such conduct is not considered 'horrendous,' 'sufficiently shocking,' or 'conscience shocking.' "

is not a panacea for every remonstrant disappointed ... by his treatment at the hands of a state agency.").

The First Circuit has likewise emphasized that state-law malicious prosecution claims do not become actionable under federal law merely because they are "garbed in the regalia of § 1983." *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256 (1st Cir.1996); *see also Nieves v. McSweeney*, 241 F.3d 46, 53–54 (1st Cir. 2001) ("[S]ubstantive due process may not furnish the constitutional peg on which to hang a federal malicious prosecution tort."). Again, the Court does not take lightly plaintiffs' allegations that the defendants conspired to frame Mr. Freeman for a crime he did not commit. It merely reports the prevailing law that claims arising out of such allegations must be adjudicated in a different forum.

Involvement of the federal courts in such local disputes would jettison "any hope of maintaining a meaningful separation between federal and state jurisdiction," *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822, 831 (1st Cir.1982), and would "insinuate the oversight and discretion of federal judges into areas traditionally reserved for state and local tribunals," *Nestor Colon Medina*, 964 F.2d at 44–45. Federal intervention is particularly inappropriate where, as here, the "panoply of state remedies" is more than sufficient to safeguard the rights of the plaintiffs "to a point well above the constitutional minimum." *Amsden*, 904 F.2d at 757–58.

The Court will also comment upon Magistrate Judge Boal's recommendation that this Court decline to exercise supplemental jurisdiction over the pendant state-law claims. Defendants propose, instead, that the Court exercise supplemental jurisdiction over those claims and dismiss them with prejudice on the grounds that they are "baseless" and "conclusory."

■ As Magistrate Judge Boal explained in the R & R, the dismissal of federal claims which form the basis for a district court's original jurisdiction does not automatically divest the court of its supplemental jurisdiction over pendant state-law claims but does require the court to assess pragmatically whether retaining jurisdiction is in the interest of "fairness, judicial economy, convenience, and comity." *Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir.1998).

■ On the whole, the balance of competing factors weighs against the exercise of supplemental jurisdiction in this case. First, dismissal of state-law claims without prejudice is the baseline rule where, as here, the foundational federal claims are dismissed at an early stage in the litigation. *Id.* Second, while some of the hostilities described in the Complaint appear to be petty and precipitated, at least in part, by the plaintiffs' own vexatiousness, many of the allegations are serious and supported by some documentary evidence. This is not an instance in which the exercise of supplemental jurisdiction is warranted to dispose of frivolous claims. *E.g., Wright v. Assoc'd Ins. Cos.*, 29 F.3d 1244, 1251–53 (7th Cir.1994). Third, and most importantly, the motivating factor for dismissal of the federal claims is the established policy that the underlying allegations are beyond the purview of the federal courts. The purpose served by dismissal of the federal claims would be undermined were the Court to proceed to exercise supplemental jurisdiction over the state-law claims.

### ORDER

In accordance with the foregoing, the Report and Recommendation (Docket No. 36) is hereby **ACCEPTED** and **ADOPTED**. Counts I, II and IV have been withdrawn by the plaintiffs and are

dismissed accordingly. The § 1983 claim asserted in Count III is dismissed with prejudice for the reasons set forth in the R & R. Having dismissed the federal claims, the Court declines to exercise supplemental jurisdiction over Counts V through VIII, which recite state-law claims for abuse of process, intentional infliction of emotional distress, defamation and violation of the Massachusetts Civil Rights Act. Those claims are dismissed without prejudice and may be reasserted in a state court of proper jurisdiction.

**So ordered.**

### REPORT AND RECOMMENDATION

BOAL, United States Magistrate Judge.

Plaintiffs Charles and Daniela Freeman (collectively, "the Freemans") bring this action against fourteen defendants: the Town of Hudson, the Town of Hudson Conservation Commission ("Conservation Commission"), the Town of Hudson Police Department, Police Sergeant Thomas Crippen, Police Captain David Stephens, Police Chief Richard Braga, Conservation Commission Administrator Debbie Craig, Conservation Commission Chairman Paul Byrne, Conservation Commission member David Esteves, Building Commissioner Jeff Wood, Electrical Inspector Thomas Thorburn, the Commonwealth of Massachusetts Department of Environmental Protection ("DEP"), and DEP employee Joseph Bellino. (Docket No. 1). As a result of various property disputes, the Freemans allege, pursuant to 42 U.S.C. § 1983, that all of the Defendants, with the exception of the DEP, violated their Equal Protection and Due Process rights under the Fourteenth Amendment and, pursuant to 42 U.S.C. § 1985, conspired to deprive them of their Constitutional rights. The Freemans also bring a number of state law claims against various Defendants, specifically: (1) the Massachusetts Civil Rights Act (against the individual Defendants in their personal capacities); (2) abuse of process (against all Defendants except Chief Braga); (3) intentional infliction of emotional distress (against all Defendants); and (4) defamation (against Byrne and Craig). The Defendants have moved to dismiss the Freemans' complaint. (Docket Nos. 18, 19, 21).[1] The Court heard oral argument on January 23, 2012.

For the reasons discussed below, this Court recommends that the District Court dismiss the Freemans' Section 1985 and Section 1983 claims. Because it recommends dismissal of the federal claims, this Court further recommends that the District Court decline to exercise supplemental jurisdiction. However, if the District Court decides to exercise supplemental jurisdiction over the Freemans' state law claims, the Court recommends that the District Court grant Defendants' motions to dismiss as they relate to the Massachusetts Civil Rights Act, intentional infliction of emotional distress, and defamation claims, and deny the motions as they relate to the abuse of process claim against certain of the Police Department Defendants.

### I. FACTS[2]

The Freemans' complaint alleges actions taken by the Defendants over the course of two years regarding the Freemans and their neighbors, the Crippens and the

---

**1.** On October 26, 2011, the District Court referred these motions to the undersigned for report and recommendation.

**2.** Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Complaint and drawing all reasonable inferences in the Plaintiffs' favor. *See Morales–Tañon v. Puerto Rico Electric Power Authority*, 524 F.3d 15, 17 (1st Cir. 2008).

MacPhees. All three properties border a conservation restriction area in Hudson, Massachusetts. The Complaint consists of one hundred and twenty three pages of allegations and exhibits. The description below therefore represents a summary of the allegations.

A. *Allegations Against The Town of Hudson, The Conservation Commission, The DEP, Craig, Esteves, Byrne, And Bellino*

In the fall 2009, the Freemans' neighbor, Sergeant Crippen, allegedly complained to the Conservation Commission about the Freemans' construction of a tree house in a conservation restriction area of the Freemans' property. Complaint, ¶ 17. On November 16, 2009, the Conservation Commission issued an enforcement order demanding that the Freemans cease and desist from further building of the tree house and that the Freemans appear at a December 3, 2009 Conservation Commission meeting. Complaint, ¶ 19.

At a December 3, 2009 meeting, Mr. Freeman accepted responsibility for building the tree house and agreed to remove it. Complaint, ¶ 40. At that time, the Conservation Commission addressed issues related to the Freemans' compliance with a 2007 Order of Conditions, which the Freemans allege had been resolved by a Certificate of Compliance dated July 7, 2008. Complaint, ¶ 40; Exhibit F. At a December 17, 2009 meeting, the Conservation Commission again asserted that the Freemans had not complied with the 2007 Order of Conditions. Complaint, ¶ 50.

At a January 21, 2010 Conservation Commission meeting, Mr. Freeman and his engineer submitted a Notice of Intent ("NOI") and preliminary plan for his property. Complaint, ¶ 55. The Freemans allege that Byrne and Esteves made disparaging remarks toward Mr. Freeman and his engineer at this meeting and at others,

and these comments included stating that Mr. Freeman and his engineer were liars and, "If I was a farmer, I would not put the fox in charge of the hen house because all the hens will disappear." Complaint, ¶ 56. The Freemans also allege that the Conservation Commission Defendants and Bellino threatened that the Conservation Commission would involve the DEP if the Freemans did not comply with the Conservation Commission's demands and that such action could result in a six-figure fine. Complaint, ¶¶ 57, 61.

On June 17, 2010, allegedly in excess of its authority, the Conservation Commission issued a new Order of Conditions for the Freemans' property. Complaint, ¶ 91; Exhibit V. The Order provides that noncompliance would result in Wetland Protection Enforcement proceedings by the Conservation Commission and/or other state authorities. Exhibit V. The Freemans appealed to the DEP and sought a superseding Order of Conditions. *Id.* On September 23, 2010 the Freemans voluntarily dismissed their appeal to DEP and began to prepare to perform the work required under the June 17, 2010 Order. Complaint, ¶ 119. Despite the Freemans' withdrawal of their appeal, the Conservation Commission Defendants issued a cease and desist order to the Freemans and had Hudson Police officers accompany them on their visits to the Freemans' property. Complaint, ¶¶ 119–121. Esteves also erroneously insisted that the Freemans' silt fence was installed incorrectly and removed it, which delayed the Freemans' work for several days. Complaint, ¶¶ 123–128.

B. *Allegations Against Building Department Defendants Wood And Thorburn*

The Freemans allege that Electrical Inspector Thorburn reported the Freemans'

electrician to the Department of Public Safety and Board of Licensure for his installation of a video surveillance system without a required "S–License." Complaint, ¶¶ 146–147. The Freemans also allege that Building Inspector Wood selectively enforced a zoning by-law regarding the posting of contractor signs on customer property. Complaint, ¶¶ 140–142.

### C. Police Department Defendants Sergeant Crippen, Chief Braga, And Captain Stephens

On or about July 12, 2010, in retaliation for complaints made by Mr. Freeman against Sergeant Crippen, the Police Department Defendants conspired to have a criminal complaint filed in the Marlboro District Court against Mr. Freeman based on alleged incidents involving Mr. MacPhee that occurred in 2009 and 2010. Complaint, ¶¶ 93, 96, 107. In essence, the Freemans allege that the criminal complaint was the result of a conspiracy on the part of Crippen and Stephens against Mr. Freeman. See Complaint, ¶¶ 93–106. The Freemans allege that the Police Department Defendants did not investigate Mr. MacPhee's harassment complaint, did not speak to Mr. Freeman prior to filing the complaint, although it was Hudson Police practice to do so, and improperly urged the court not to give Mr. Freeman notice of the probable cause hearing. Complaint, ¶¶ 99–101.

## II. ANALYSIS

### A. Voluntarily Dismissed Claims

The Freemans have voluntarily agreed to the dismissal of a number of claims. First, the Freemans stated at oral argument and in their oppositions to the Defendants' motions to dismiss that Counts I and II are duplicative of their Section 1983

claim and have stated that they will voluntarily withdraw them. See, e.g., Docket No. 31, p. 31.[3] The Freemans have also agreed to withdraw Count IV of the Complaint, which alleged violations of 42 U.S.C. § 1985. See, e.g., Docket No. 31, p. 2 n. 2. Accordingly, Counts I, II, and IV should be dismissed.

Second, the Freemans concede that the Town of Hudson Police Department is not a separate entity from the Town of Hudson. Docket No. 29, p. 3. Accordingly, the Court recommends that the District Court dismiss the claims against the Town of Hudson Police Department.

With respect to a number of other claims, the Freemans allege that they are brought against all Defendants but then did not oppose a motion to dismiss for all Defendants. For example, the Freemans allege that all Defendants except the DEP violated their equal protection rights, Docket No. 1, p. 35, but did not oppose Bellino's motion to dismiss the equal protection claims against him. The Freemans' counsel conceded at oral argument that he did not intend to bring an equal protection claim against Bellino. This same pattern occurred with respect to the following claims: (1) the equal protection claims against Police Department Defendants Braga, Stephens, and Crippen; (2) the substantive due process claims against the Building Department Defendants Wood and Thorburn; and (3) the intentional tort claims against the DEP and Bellino. The Freemans' acknowledgment that they do not intend to pursue certain claims warrants their dismissal. Accordingly, because the Freemans failed to oppose their dismissal, on that basis, the Court recommends dismissal of the following claims: (1) the equal protection claims against Bel-

---

**3.** For purposes of deciding the motions to dismiss, the Court will incorporate the allegations contained in Counts I and II in its consideration of the Section 1983 claim (Count III).

lino, Braga, Stephens, and Crippen; (2) the substantive due process claims against Wood and Thorburn; and (3) the intentional tort claims against the DEP and Bellino.

### B. *Standard Of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). While the court must accept as true all of the factual allegations contained in the complaint, that doctrine is not applicable to legal conclusions. *Iqbal*, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.; see also Sanchez v. Pereira–Castillo*, 590 F.3d 31, 48 (1st Cir.2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted). Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of misconduct. *Iqbal*, 129 S.Ct. at 1950.

### C. *Scope Of The Record*

■ All parties attach documents to their briefs. In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000), *aff'd*, 248 F.3d 1127 (1st Cir.2000). Courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties, for official public records, for documents central to plaintiffs' claim or for documents sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Consideration of other materials is generally forbidden unless the motion is properly converted into one for summary judgment. *Id.* Accordingly, the Court may consider the documents attached to the complaint. The Court will also consider the documents attached to the motion for judicial notice, which consists of copies of *nolle prosequi* filed in the criminal case against Mr. Freeman. *See* Docket No. 33.[4]

The Conservation Commission and the Town of Hudson attach the following documents to their motion to dismiss: (1) the Conservation Restriction and Easement for the Freeman property (Exhibit 1); (2) Hudson Police Department incident reports (Exhibit 2); (3) an email exchange between an Assistant District Attorney and Captain Stephens concerning the filing of charges against Mr. Freeman (Exhibit 3); (4) an application for criminal complaint for Mr. Freeman (Exhibit 4); and (5) an order denying Mr. Freeman's mo-

---

**4.** The motion for judicial notice was granted on February 16, 2012. *See* Docket No. 35.

tion to dismiss the criminal complaint (Exhibit 5). Docket No. 20.

On a motion to dismiss, this Court finds that it may only properly consider the Conservation Restriction and Easement and the order denying Mr. Freeman's motion to dismiss the criminal complaint and declines to consider the other exhibits. The Court may consider the Conservation Restriction and Easement because the Freemans refer, but do not attach, the Conservation Restriction and Easement to their Complaint. *See* Complaint, ¶¶ 17, 19, 40. Although not relevant to its determination of the current motions, the Court may consider the order denying Mr. Freeman's motion to dismiss the criminal complaint because it is a public record.

The DEP and Bellino attach five exhibits to their memorandum in support of their motion to dismiss: (1) a Notice of Intent from DEP to Mr. Freeman (Exhibit 1); (2) Mr. Freeman's administrative appeal and the Town of Hudson's response (Exhibits 2, 3); and (3) correspondence between Mr. Freeman and Mr. Nadeau of DEP (Exhibits 4, 5). Docket No. 18. Although not relevant to its determination of the current motions, the Court may consider the Freemans' administrative appeal (Exhibit 2) and email withdrawing their appeal (Exhibit 4) because the Freemans refer, but do not attach, them to their Complaint. *See* Complaint, ¶¶ 91, 118.

In response to the Conservation Commission and Town of Hudson's motion to dismiss, the Freemans attach to their opposition six exhibits: (1) transcripts of 911 calls to the Hudson Police Department (Exhibit A); (2) excerpts of transcripts for Mr. MacPhee and Captain Stephens from depositions taken in a civil action between the Crippens and the Freemans (Exhibits B, C); and (3) Town of Hudson incident reports (Exhibits D, E). Docket No. 30. Because these documents do not meet any of the exceptions listed above, the Court declines to consider any of these exhibits for purposes of this report and recommendation.

### D. *Section 1983*

 Section 1983 is a vehicle through which individuals may sue certain persons acting under the color of state law for deprivation of federally assured rights. *Gagliardi v. Sullivan,* 513 F.3d 301, 306 (1st Cir.2008). Specifically, Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–4, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

"A claim under Section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law" and "second, the conduct must have worked a denial of rights secured by the Constitution or by federal law." *Soto v. Flores,* 103 F.3d 1056, 1061 (1st Cir.1997). For purposes of the Defendants' motions, there is no dispute that the Defendants were acting under color of state law. However, the Defendants contend that the Freemans have failed to state a claim that they deprived them of any constitutional rights.

E. *Claims Against Defendants Town Of Hudson And Conservation Commission*

■ The Freemans assert claims against the Town of Hudson[5] ("the Town") and the Conservation Commission. The Town and Conservation Commission argue that they cannot be held liable under Section 1983 for the acts of their employees because the Freemans have not sufficiently stated a claim that the actions were a result of a municipal custom or policy.

■ Under Section 1983, it is well established that a municipality is not liable for the actions of its employees simply by virtue of the employment relationship. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, under *Monell* and subsequent cases, a plaintiff seeking to prove municipal liability under Section 1983 must identify a municipal policy or custom that caused the plaintiff's injury. *Id.* at 694; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Young v. City of Providence*, 404 F.3d 4, 25 (1st Cir.2005). A Section 1983 claim based on a theory of municipal policy is only viable where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690, 98 S.Ct. 2018. "The governmental policy must be so tied to the challenged acts that it can be said to be the moving force of the constitutional violation." *Bibbo v. Mulhern*, 621 F.Supp. 1018, 1027 (D.Mass.1985) (internal citations omitted).

■ Nevertheless, a single decision by person with final policy-making authority may result in municipal liability under cer-

tain circumstances. *Welch v. Ciampa*, 542 F.3d 927, 942 (1st Cir.2008) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–2, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). However, this single action "must be taken by a municipal official with final policy-making authority in the relevant area of the city's business." *Roma Construction Co. v. aRusso*, 96 F.3d 566, 576 (1st Cir.1996) (citation omitted); *see ·also Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292 (Municipal liability under Section 1983 attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."). The determination of whether an official has final policy-making authority in a particular area is a question of state law. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *see also Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292.

The Town and Conservation Commission correctly argue that the Freemans have not sufficiently alleged that a municipal custom, policy or practice caused them constitutional harm. The Freemans agree and instead argue that the Town and the Conservation Commission should be held liable because the alleged unconstitutional actions were taken by officials with final policy-making authority. Docket No. 29, p. 4–7. The Freemans argue that the Conservation Commission "is the final policy maker as reflected by the decision it makes." Docket No. 29, p. 4. They further argue that Byrne "is the final policy maker of the Commission." *Id.* Finally, they argue that Captain Stephens and Chief Braga have final authority "as to whether

---

**5.** The Freemans correctly assert that they can bring separate claims against the Conservation Commission. *See SBT Holdings, LLC v.*

*Town of Westminster*, 547 F.3d 28, 38 (1st Cir.2008).

criminal complaints will be filed." *Id.* at p. 5.

To survive a motion to dismiss, a complaint must provide support for a reasonable inference that an official has the requisite authority. *See Rinsky v. Trustees of Boston University,* No. 10–10779, 2010 WL 5437289, *5–6, 2010 U.S. Dist. LEXIS 136876, *15–16 (D.Mass. December 27, 2010) (granting motion to dismiss Section 1983 claim against defendant because the complaint did not provide local or state law, town charter, or procedural manual to support inference that individual had final policy-making authority). The Freemans have not specifically alleged or provided any information to support the inference that the Conservation Commission, Byrne, Captain Stephens or Chief Braga have final policy-making authority. Accordingly, the Court recommends that the District Court dismiss the Freemans' Section 1983 claims against the Town of Hudson and the Conservation Commission.

### F. *Claims Against The Individual Defendants*

#### 1. *Equal Protection*

The Freemans contend that the Conservation Commission and Building Department Defendants intentionally and wrongfully singled them out for adverse treatment as compared to similarly situated individuals and that they lacked a rational basis for this treatment. Complaint, Count I.[6] The Freemans also allege that this difference in treatment was motivated by bad faith and malicious intent on the part of the Defendants. *Id.* Defendants argue that the Freemans failed to state an equal protection violation because they have not alleged that they were treated differently from specific, similarly situated individuals or that the alleged actions were motivated by bad faith or malicious intent. Docket No. 22, p. 6–8.

The Freemans assert a "class of one" equal protection claim, that is, "a claim in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment." *SBT Holdings, LLC.,* 547 F.3d at 33. To establish a "class of one" equal protection violation, the Freemans must allege that "compared with others similarly situated [they] were selectively treated ... based on impermissible considerations such as ... intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injury a person." *Barrington Cove, LP v. R.I. Hous. & Mortg. Fin. Corp.,* 246 F.3d 1, 7 (1st Cir.2001) (internal quotation marks and citation omitted); *see also Cordi–Allen v. Conlon,* 494 F.3d 245, 250 (1st Cir.2007) (plaintiffs must allege that they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.").[7]

The test for whether a plaintiff has shown that entities are similarly situated is "whether a prudent person, looking

---

**6.** As stated earlier, for purposes of deciding the motions to dismiss, the Court has subsumed the allegations stated in Count I (Equal Protection) into the Freemans' Section 1983 claim (Count III).

**7.** In *Walsh v. Town of Lakeville,* 431 F.Supp.2d 134, 143–145 (D.Mass.2006), Judge Gorton notes that some ambiguity exists after the Supreme Court's decision in *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564,

120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000), as to whether there is a bad faith component to the burden of proof for an equal protection claim where the plaintiff belongs to a "class of one." After reviewing the Supreme Court's decision and subsequent First Circuit cases, some of which are cited above, Judge Gorton concludes that a malice/bad faith standard does apply in such cases. This Court does as well.

objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." *Barrington Cove*, 246 F.3d at 8 (internal quotation marks and citations omitted). "Exact correlation is neither likely or necessary, but the cases must be fair congeners. In other words, apples must be compared to apples." *Id.* Although the determination as to whether parties are similarly situated is a "fact-bound inquiry" this does not mean "that every case, regardless of the proof presented, is a jury case." *Cordi–Allen*, 494 F.3d at 251. A plaintiff must identify the similarly situated entities and circumstances to "a high degree." *Rectrix Aerodrome Centers, Inc. v. Barnstable Municipal Airport Comm'n*, 610 F.3d 8, 16 (1st Cir.2010). The Freemans must "first identify related *specific instances* where persons *situated similarly in all relevant respects* were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled ... out for unlawful oppression." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir.2006) (emphasis in original). The Freemans "must show that the parties with whom [they] seek[ ] to be compared have engaged in the same activity vis-a-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile." *Cordi–Allen*, 494 F.3d at 251.

▮ The "similarly situated" requirement must "be enforced with particular rigor in the land-use context" because such decisions "will often, perhaps almost always, treat one landowner differently from another." *Id.* (internal quotation marks and citations omitted). "Given this template, virtually every ... decision—in the absence of a sensible limiting principle—would be a candidate to find its way to

federal court in the guise of an equal protection claim." *Id.*

In order to prove that Defendants acted maliciously or with bad faith, the Freemans must establish "more than the government official's actions were simply arbitrary or erroneous; instead the plaintiff must establish that the defendant's actions constituted a gross abuse of power." *Tapalian v. Tusino*, 377 F.3d 1, 6 (1st Cir. 2004) (internal quotation marks omitted). The malice/bad faith standard is "very high and must be 'scrupulously met.'" *Walsh*, 431 F.Supp.2d at 145 (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 911 (1st Cir.1995)).

The Court will now address the Freemans' claims against each remaining individual in turn.[8]

### a. Building Department Defendants Wood and Thorburn

▮ The Freemans allege that Building Commissioner Wood violated their equal protection rights by selectively enforcing a zoning by-law regarding the placement of signs by contractors at the residences at which they are working. Docket No. 31, p. 23; Complaint, ¶ 140. The Freemans allege that Charles Freeman and other contractors have displayed signs "for years without a problem" but that Wood decided to enforce the zoning by-law in retaliation for Craig, Wood's office-mate, being deposed in another civil matter regarding the Freemans. *Id.;* Complaint, ¶ 141. The Freemans also allege that Wood deviated from his practice of sending a violation notice to the contractor and instead sent a violation notice to the owner of the property. Complaint, ¶ 142. These allegations are insufficient to state an equal protection claim against Wood because the Freemans have not identified anyone, aside from a conclusory

---

**8.** As discussed earlier, the Freemans failed to oppose the motions to dismiss the equal protection claims against Bellino, Braga, Stephens, and Crippen.

identification of "other contractors," Complaint, ¶ 141, that were similarly situated to the Freemans that Wood treated differently, in the "few times [the bylaw] has been enforced since 2009." Complaint, ¶ 142.

The Freemans allege that Thorburn, the Electrical Inspector, violated their equal protection rights because he complained to the state Division of Professional Licensure that the electrician who installed the Freemans' surveillance system did not have the requisite license. Complaint, ¶¶ 144-9. The Freemans further allege that the Town has three surveillance cameras that were installed without a permit. Complaint, ¶ 148. However, they have failed to connect these allegations with any action taken by Thorburn. Assuming, *arguendo,* that the treatment of the Freemans' electrician can be equated to treatment of the Freemans themselves, the complaint does not identify any similarly situated individuals that received different treatment from Thorburn. The Complaint does not compare explicitly the Freemans with the Town of Hudson. Complaint, ¶ 148. In any event, the Freemans have not sufficiently alleged that they are similarly situated.

Accordingly, the Court recommends that the District Court dismiss the Freemans' equal protection claim against Wood and Thorburn.

### b. *Conservation Commission Defendants Craig, Esteves, And Byrne*

▇▇ The Freemans allege that Craig, Byrne and Esteves violated their equal protection rights because they treated them differently than other similarly situated individuals, namely their neighbors, the Crippens and the MacPhees. Docket

No. 31, p. 22-23. As support, the Freemans allege that the Conservation Commission Defendants: (1) issued cease and desist letters to the Freemans for violations but only verbally contacted the Crippens and allowed them to rectify the violations without a formal process (Complaint, ¶¶ 44-47); (2) provided Crippen with notice that the Conservation Commission was going to inspect his silt fence, but did not provide such advance notice to the Freemans (Complaint, ¶¶ 64-65); (3) took no action when presented with evidence that the MacPhees had cut down 100 small trees and put planks across conservation land (Complaint, ¶ 73); and (4) allowed the Crippens to read a prepared statement at a Conservation Commission meeting but did not allow the Freemans to do so and escorted Mr. Freeman out of the meeting when he sought to provide such a statement (Complaint, ¶¶ 88-90).

The Freemans argue that they are similarly situated to the Crippens and the MacPhees because the Crippens, MacPhees and Freemans' properties all border the same Conservation Restriction Area. Docket No. 31, p. 8. However, a portion of the Freemans' property, "Parcel B," is subject to a deeded Conservation Restriction and Easement, which specifies what can and cannot be done on the parcel and provides the Conservation Commission with the right to enforce these restrictions. Docket No. 20, Exhibit 1. The Freemans do not allege that the actions taken by the Crippens and MacPhees were subject to this Conservation Restriction.

Accordingly, the Freemans have not stated an equal protection claim against the Conservation Committee Defendants, and the Court recommends that the District Court dismiss the equal protection claim against them.[9]

---

9. Because this Court finds that the Freemans have not stated a claim that the Conservation Commission Defendants treated them differ-ently than other similarly situated individuals, it need not address their allegations of bad faith. *See Barrington Cove,* 246 F.3d at 10.

### 2. *Due Process*

The Freemens allege that the Conservation Commission and Police Department Defendants have intentionally and wrongfully violated their right to substantive due process and that their actions were arbitrary, irrational, and without lawful authority. Complaint, Count II. Defendants argue that the Freemans have failed to allege a viable substantive due process claim. This Court agrees. As detailed more fully below, "what is clearly a hostile and bitter feud between a town and one of its citizen-businesses nevertheless does not rise to the level of a substantive due process violation." *Burnham v. Salem*, 101 F.Supp.2d 26, 40 (D.Mass.2000).

Due process requires that no government shall deprive any person of "life, liberty or property without due process of law." Substantive due process refers to whether the government has an adequate reason for taking a person's protected interest. *Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). As the Supreme Court has stated: "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty' ... [o]nly after finding the deprivation of a protected interest do we look to see if the [government's] procedures comport with due process." *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

Substantive due process prevents "governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 45 (1st Cir.1992) (internal quotation marks and citation omitted). Thus, in alleging that the specific acts of an official violated their due process rights, the Freemans must sufficiently allege "that the acts were so egregious as to shock the conscience" and that such acts deprived the Freemans' "of a protected interest in life, liberty, or property." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir.2006). "[C]onscience-shocking conduct is an indispensable element of a substantive due process challenge to executive action." *Id.* (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 n. 4 (1st Cir. 2005)).

There is "no scientifically precise formula for determining whether executive action is—or is not—sufficiently shocking to trigger the protections of the substantive due process branch of the Fourteenth Amendment," and therefore the analysis will vary "with the subject matter and the circumstances." *Pagan*, 448 F.3d at 32. However, conscience shocking conduct "must at the very least be 'extreme and egregious.' " *Id.* (quoting *DePoutot*, 424 F.3d at 119). " '[M]ere violations of state law, even violations resulting from bad faith,' do not invariably amount to conscience-shocking behavior." *Id.* The First Circuit has "left the door slightly ajar for federal relief in truly horrendous situations" but "the due process clause may not ordinarily be used to involve federal courts in the rights and wrongs of local planning disputes." *Nestor Colon*, 964 F.2d at 45. Further, Section 1983 "is not a panacea for every remonstrant disappointed either by his treatment at the hands of a state agency or by the outcome of administrative proceedings." *Amsden v. Moran*, 904 F.2d 748, 758 (1st Cir.1990).

The Freemans do not allege in their Complaint that the Conservation Commission Defendants and Bellino have deprived them of a protected interest in liberty or property. At oral argument, the Freemans' counsel argued that the Conserva-

tion Commission Defendants and Bellino deprived the Freemans of a property interest in the sense that their actions forced the Freemans to expend large amounts of money in order to avoid fines by the DEP. Assuming, *arguendo*,[10] that the Freemans have alleged a deprivation of a protected property interest, as detailed below they have failed to state a claim that these Defendants' actions were extreme and egregious.

### a. *Bellino*

 The Freemans allege that Bellino violated their substantive due process rights because in a September 9, 2010 email to Craig, Bellino "makes fun of the fact Plaintiffs are selling their house and gloats how the fine DEP intended to impose would substantially lessen the value" and that in another email he "gloats he has an 'early Christmas present'" for the Freemans. Docket No. 28, p. 7–8; Complaint, ¶¶ 117, 119; Exhibits X, W to Complaint. While Bellino's statements, as alleged in the complaint, are perhaps unfortunate, they are not "so shocking or violative of universal standards of decency." *Amsden*, 904 F.2d at 757 (quoting *Furtado v. Bishop*, 604 F.2d 80, 95 (1st Cir. 1979)). Accordingly, the Court recommends that the District Court dismiss the Freemans' due process claims against him.

### b. *Conservation Commission Defendants Craig, Esteves, And Byrne*

The Freemans argue that they have stated a claim that the Conservation Commission Defendants violated their substantive due process rights because they allege that these Defendants engaged in an "all-out attack" against them "in an attempt to heap on penalties and injure them." Docket No. 31, p. 26. The Freemans further argue that these Defendants expressed bias against the Freemans, expressed a predisposition to rule against them, and improperly used the threat of DEP involvement to force the Freemans to take action "beyond the Conservation Commission's authority." *Id.*

Taking the Freemans allegations as true, the conduct alleged by the Conservation Commission Defendants is not extreme and egregious. Viewing the Complaint in the light most favorable to the Freemans, they allege that the Conservation Committee Defendants exceeded or abused their authority. "Every appeal by a disappointed [individual] from an adverse ruling by a local ... planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the [individual's] point of view) reason." *Mongeau v. City of Marlborough*, 492 F.3d 14, 19 (1st Cir. 2007) (quoting *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.1982)). For that reason, the First Circuit has "been hesitant 'to involve federal courts in the rights and wrongs of local planning disputes' unless there is a 'truly horrendous situation [ ].'" *Id.* (quoting *Nestor Colon*, 964 F.2d at 45). Based on the facts alleged, this Court sees no reason to deviate from such precedent in this case. The Freemans have not alleged facts describing conduct that is extreme and egregious or truly horrendous. Accordingly, this Court recommends that the District Court dismiss the Freemans' due process claims against the Conservation Commission Defendants.

---

**10.** The protections afforded by the substantive component of the Due Process clause have generally been limited to "matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

### c. Police Department Defendants Sergeant Crippen, Chief Braga, And Captain Stephens

As an initial matter, the Freemans allege that Sergeant Crippen inappropriately used his authority as a police officer to receive treatment that would not have been afforded a private citizen. Specifically, they allege that he obtained information regarding when the Conservation Commission would serve an enforcement order on the Freemans and that Craig inappropriately kept him apprised on how the Conservation Commission was proceeding against the Freemans. Docket No. 31, p. 27; Complaint, ¶¶ 20, 21, 75–78, 82. However, as best as can be determined from the Freemans' lengthy and at times rambling Complaint, the Freemans have failed to allege how Sergeant Crippen's access to information about the Freemans' matters before the Conservation Commission violates the Freemans' constitutional rights. Accordingly, the Court recommends that any due process claim on this basis be dismissed.

▇▇ The Freemans allege an orchestrated abuse of power by Sergeant Crippen, Chief Braga, and Captain Stephens in connection with the criminal complaint brought against Mr. Freeman based on the allegations of a neighbor, Mr. MacPhee. Complaint, ¶¶ 93–113. Specifically, the Freemans allege in their complaint that: (1) Crippen plotted to have Mr. MacPhee file a criminal complaint against Mr. Freeman and told Mr. MacPhee to call Captain Stephens about this (Complaint, ¶ 94); (2) Mr. MacPhee met Captain Stephens at the Hudson Police Department after he visited the Crippens' home (Complaint, ¶¶ 95–96); (3) it was Captain Stephens' common practice to speak with the subject of a criminal complaint before its filing but did not so speak with Mr. Freeman (Complaint, ¶ 98);

(4) Captain Stephens urged that Mr. Freeman not be given notice of the probable cause hearing regarding the criminal complaint because of a fabricated claim that Mr. Freeman was a threat of imminent harm to Mr. MacPhee (Complaint, ¶¶ 99–100); (5) the Hudson Police Department did not investigate Mr. MacPhee's claims and relied only on the word of Mr. MacPhee in bringing the complaint (Complaint, ¶ 101); and (6) Captain Stephens exerted pressure on the Assistant Attorney General who was handling the matter (Complaint, ¶¶ 107–109, 112–113).

The Freemans' counsel argued at the motion hearing that the Police Department Defendants' initiation of a criminal complaint violated Mr. Freeman's substantive due process rights because their actions restrained Mr. Freeman's liberty. In light of this, and, viewing the Complaint in the light most favorable to the Freemans, the claim against the Police Department Defendants in connection with the filing of the criminal complaint is more appropriately alleged as a Fourth Amendment[11] violation. The Supreme Court has held that where a particular amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright,* 510 U.S. at 273, 114 S.Ct. 807 (citing *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotation marks omitted)); *see also Pagan,* 448 F.3d at 33 ("Substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is covered by a specific constitutional provision."); *Brooks v. Chicago,* 564 F.3d 830, 833 (7th Cir.2009) ("A plaintiff cannot state a due

---

11. The Fourth Amendment provides the right "to be secure ... against unreasonable searches and seizures...." U.S. Const. amend. IV.

process claim by combining what are essentially claims ... under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.") (internal citation and quotation marks omitted). Because the Fourth Amendment provides for the constitutional protection for Mr. Freeman's liberty, the Freemans cannot pursue relief under a substantive due process theory.

Even assuming, *arguendo*, that the Freemans' claim is appropriately analyzed as a substantive due process violation, the actions alleged are not truly horrendous. *See Burnham*, 101 F.Supp.2d at 40 (finding officials' conduct, which included the filing of 12 criminal complaints that were mostly dismissed or nolle prossed, was not truly horrendous.). Accordingly, the Court recommends that the District Court dismiss the Freemans' due process claims against the Police Department Defendants.[12]

### G. *State Law Claims*

■ The Freemans have also brought claims for violations of the Massachusetts Civil Rights Act (against the individual Defendants), abuse of process (against all Defendants except Chief Braga), intentional infliction of emotional distress (against all Defendants), and defamation (against Byrne and Craig). In light of this Court's recommendation that the federal constitutional claims be dismissed, this Court also recommends that the district court decline to exercise its supplemental jurisdiction over the state law claims. *See Camelio v. American Fed'n*, 137 F.3d 666, 672 (1st Cir.1998) ("Needless decisions of state law

should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Where, as here, the federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]" *Id.* In the instant case, no party has put forth any reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction over the state law claims. Accordingly, this Court recommends that the entire complaint be dismissed.

Should the District Court decide to retain jurisdiction, this Court recommends that the District Court grant the Defendants' motions to dismiss the Massachusetts Civil Rights Act, intentional infliction of emotional distress and defamation claims, but deny the Defendants' motion regarding the abuse of process claims against Sergeant Crippen and Captain Stephens.

#### 1. *Sovereign Immunity*

The DEP correctly argues that the doctrine of sovereign immunity bars the Freemans' claims against it in federal court. Docket No. 18-1, p. 20. The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment also bars suits brought

---

12. Because the Freemans have failed to establish a constitutional violation, the Court does not need to address the Defendants' argument that they are entitled to qualified immunity. *Ruiz–Casillas v. Camacho–Morales*, 415 F.3d 127, 134 (1st Cir.2005); *see also Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808,

172 L.Ed.2d 565 (2009) (where qualified immunity is raised, "the judges of the district courts and courts of appeals are in the best position to determine the order of decision making that will be facilitate the fair and efficient disposition of each case.").

for money damages in federal court against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). In the absence of consent or abrogation, the Eleventh Amendment proscribes a federal court case in which the state or one of its agencies or departments is the named defendant. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Alden v. Maine*, 527 U.S. 706, 713–14, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, the Court recommends that the claims against DEP be dismissed.

In addition, the Massachusetts Tort Claims Act, G.L. c. 258 § 10(c) bars claims against the Commonwealth, its agencies, and municipalities for intentional torts such as abuse of process and emotional distress. Mass. Gen. Laws c. 258 § 10(c); *see also Mason v. Mass. Dep't of Envtl. Prot.*, 774 F.Supp.2d 349, 356 (D.Mass. 2011) (no claim against Mass. DEP for intentional infliction of emotional distress); *Mellinger v. Town of West Springfield*, 401 Mass. 188, 196, 515 N.E.2d 584 (1987) (town may not be held liable for intentional infliction of emotional distress). Accordingly, the Court recommends that the Freemans' claims for abuse of process and intentional infliction of emotional distress against DEP, the Town of Hudson, and the Conservation Commission be dismissed.

### 2. *Massachusetts Civil Rights Act ("MCRA")*

The MCRA provides, in relevant part:

Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured.

Mass. Gen. Laws. ch. 12, § 11H. The MCRA authorizes civil actions by any person subjected to an interference of rights as described in Section 11H. Mass. Gen. Laws. ch. 12 § 11I. To prevail, the Freemans "must prove that (1) [their] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the inter" *Bally v. Northeastern Univ.*, 403 Mass. 713, 717, 532 N.E.2d 49 (1989) (quoting Mass. Gen. Laws ch. 12, § 11H). "The MCRA is coextensive with 42 U.S.C. § 1983, except that the Federal statute requires State action whereas its State counterpart does not, and the derogation of secured rights must occur by threats, intimidation or coercion." *Sietins v. Joseph*, 238 F.Supp.2d 366, 377–78 (D.Mass. 2003) (quotations and citations omitted). This additional requirement distinguishes valid claims under the MCRA from those under Section 1983.

The MCRA "was not intended to create, nor may it be construed to establish, a vast constitutional tort." *Mancuso v. MIAA, Inc.*, 453 Mass. 116, 131–2, 900 N.E.2d 518 (2009) (internal quotation marks and citation omitted). "It is for this reason that the Legislature explicitly limited the Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation, or coercion." *Id.* at 132, 900 N.E.2d 518. "A direct violation of civil rights is not, without a showing of coercive behavior, actionable." *Orwat v. Maloney*, 360 F.Supp.2d 146, 164 (D.Mass.2005) (quotation omitted).

For purposes of the MCRA, "a 'threat' involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct. 'Coercion' involves the application to another of such force, either physical or moral, as to constrain a person to do against his will something he would not otherwise have done." *Farrah v. Gondella*, 725 F.Supp.2d 238, 247 (D.Mass.2010) (quoting *Planned Parenthood League of Massachusetts v. Blake*, 417 Mass. 467, 474, 631 N.E.2d 985 (1994)).

The Freemans have not stated a claim for a MCRA violation because, as stated *supra*, they have not sufficiently alleged that the Defendants interfered with their exercise of a constitutional right. In addition, the Freemans have not stated a claim for a MCRA violation because they have not sufficiently alleged the use of threats, intimidation, or coercion to survive a motion to dismiss.

The Freemans contend that the Conservation Commission used their powers to coerce them to perform work on their property and used the specter of DEP involvement as a "sledgehammer." (Complaint, ¶¶ 62, 92). The Freemans also allege several "threats," specifically that Bellino and the Conservation Commission Defendants "threatened" that if the Freemans' conservation issues were not resolved at the local level, DEP would get involved and also "threatened" a six figure fine. (Complaint, ¶¶ 57-8, 61, 114). However, a "threat to use lawful means to reach an intended result is not actionable under [the MCRA]." *Mancuso*, 453 Mass. at 132, 900 N.E.2d 518. The Freemans do not allege that it would be unlawful for the DEP to be involved with the Freemans' conservation issues or that it would be unlawful for the DEP to impose a fine for a violation. Accordingly, the Court recommends that their MCRA claims against the Conservation Commission Defendants and Bellino be dismissed.

The Freemans argue that the Police Department Defendants violated the MCRA because they intimidated them and threatened criminal prosecution. Docket No. 31, p. 28. However, the Freemans have not alleged that these Defendants actually made any threats or that the Freemans were put in fear by their actions.[13] The Court therefore recommends that the District Court dismiss the MCRA claims against the Police Department Defendants.

The Freemans also argue that the Building Department Defendants interfered with their rights through threats and intimidation by "attacking those associated with Plaintiffs, namely a customer and a contractor." Docket No. 31, p. 28; Complaint, ¶¶ 140-5. However, allegations that the Building Department Defendants enforced a zoning by-law with a customer of Mr. Freeman's and filed a complaint with a licensing board are not "threats" within the meaning of the MCRA. The Freemans have also failed to allege that these actions put them in fear. Accordingly, the Court recommends that the District Court dismiss this claim against the Building Department Defendants.

### 3. *Abuse Of Process*

To sustain an abuse of process claim, the Freemans must establish that "process

---

13. The Freemans allege that Sergeant Crippen intimidated an individual who filed an affidavit on the Freemans' behalf in connection with a separate action between the Freemans and the Crippens. Complaint, ¶ 111. Specifically, the Freemans allege that Sergeant Crippen had his attorney send that individual a letter requesting that she retract the statements made in the affidavit. *Id.* However, the Freemans have not alleged that this action constitutes an interference with their constitutional rights.

was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" *Millennium Equity Holdings, LLC v. Mahlowitz*, 456 Mass. 627, 636, 925 N.E.2d 513 (2010) (quoting *Quaranto v. Silverman*, 345 Mass. 423, 426, 187 N.E.2d 859 (1963)). Thus, the three elements of abuse of process are (1) "process" was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage. *Id.* (citations omitted); *Gutierrez v. Massachusetts Bay Transportation Authority*, 437 Mass. 396, 407, 772 N.E.2d 552 (2002) (citations omitted); *Jones v. Brockton Public Markets, Inc.*, 369 Mass. 387, 389, 340 N.E.2d 484 (1975). The tort differs from malicious prosecution because abuse of process may exist "regardless of whether there was probable cause or whether the proceedings terminated in favor of the charged party." *Santiago v. Fenton*, 891 F.2d 373, 388 (1st Cir.1989); *see Gutierrez*, 437 Mass. at 408, 772 N.E.2d 552 ("probable cause is irrelevant to an abuse of process claim"); *see also Fishman v. Brooks*, 396 Mass. 643, 652, 487 N.E.2d 1377 (1986) (proving "groundlessness of an action is not an essential element for an action for abuse of process").

"Process" refers to "the papers issued by a court to bring a party or property within its jurisdiction." *Jones*, 369 Mass. at 390, 340 N.E.2d 484. Massachusetts courts have limited process to three types: writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges. *Id.* at 389–90, 340 N.E.2d 484.

In their Complaint, the Freemans brought an abuse of process claim against most Defendants. Complaint, ¶¶ 180–183. In their various oppositions to the motions to dismiss, the Freemans only defend this claim as brought against the Police Department Defendants Crippen, Stephens and Braga.[14] Docket No. 31, p. 24–25. At oral argument, counsel for the Freemans indicated his intent to pursue the abuse of process claims against only the Police Department Defendants.

The Freemans allege that the Police Department Defendants brought criminal charges against Mr. Freeman for an ulterior and/or illegitimate purpose and that he was damaged by such action. Complaint, ¶¶ 180, 184. Accordingly, Mr. Freeman has stated a claim for abuse of process against the Police Department Defendants and this Court recommends that the District Court deny Crippen and Stephens' motion to dismiss the abuse of process claim and grant the motion to dismiss the abuse of process claims against all other Defendants.

### 4. Intentional Infliction Of Emotional Distress

In order to state a claim for intentional infliction of emotional distress, the Freemans must allege that: (1) Defendants intended to cause emotional distress or should have known that emotional distress was the likely result of their conduct; (2) Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) Defendants' actions were the cause of the Freemans' emotional distress; and (4) the Freemans'

---

**14.** Although not plead in the Complaint, the Freemans indicate an intention to bring a claim against Braga for abuse of process. *See* Docket No. 31, p. 24–25. Counsel at oral argument indicated that by virtue of oversight he had neglected to name Braga in this claim.

Because the Freemans' have not filed a motion to amend and the District Court has only referred the motions to dismiss to this Court, this Court will only consider the Complaint as filed.

**160**

suffered emotional distress so severe that no reasonable person could be expected to endure it. *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144–145, 355 N.E.2d 315 (1976). "The standard for making a claim of intentional infliction of emotional distress is very high in order to 'avoid [ ] litigation situations where only bad manners and mere hurt feelings are involved.'" *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 195 (1st Cir.1996) (citing *Agis,* 371 Mass. at 145, 355 N.E.2d 315). "Recovery on such a claim requires more than 'that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.'" *Id.* (citing *Foley v. Polaroid Corp.,* 400 Mass. 82, 99, 508 N.E.2d 72 (1986)).

Taking all of the Freemans' allegations as true, the Freemans have failed to allege that the Defendants' conduct was "extreme and outrageous behavior beyond all possible bounds of decency and which are utterly intolerable in a civilized community." *Doyle,* 103 F.3d at 195 (affirming dismissal based on the fact that the complaint did not allege sufficient conduct). Even assuming, *arguendo,* that the Freemans have sufficiently alleged that the Defendants' conduct was "extreme and outrageous," the Freemans have failed to allege, aside from a conclusory allegation in Paragraphs 186–187 of the Complaint, that the Defendants' actions caused the Freemans severe emotional distress. *See Iqbal,* 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, the Freemans have not stated a claim for intentional infliction of emotional distress, and the Court recommends that the District Court dismiss this claim against all Defendants.

### 5. *Defamation*

The Freemans allege that Byrne "defamed Mr. Freeman at meetings" and called Mr. Freeman a "liar" and stated: "If I was a farmer, I would not put the fox in charge of the henhouse because all the hens will disappear." (Complaint, ¶¶ 49, 56). The Freemans also allege that Byrne "defamed Mr. Freeman" to a buyer of Mr. Freeman's property and that Byrne went to Casaceli Trucking and told Mr. Casaceli that "he would have a hard time working on Freeman's property and that he had multiple violations to work through if he worked there" and "defamed Mr. Freeman as a contractor." (Complaint, ¶¶ 136–7).

The Freemans also allege that Craig "defamed" Mr. Freeman's work to a customer. (Complaint, ¶ 139). Specifically, the Freemans allege that Craig told one of Mr. Freeman's customers to not start a job until the customer had a permit. *Id.* When the customer responded that he knew that, Craig allegedly replied, "I know you know, But [sic] your contractor [Mr. Freeman] doesn't." *Id.* The Freemans allege that Craig made this statement to jeopardize Mr. Freeman's relationship with his customer. *Id.*

To prevail on a defamation claim under Massachusetts law, "a plaintiff must show that the defendant was at fault for the publication of a false statement of and concerning the plaintiff which was capable of damaging his or her reputation in the community, and which either caused economic loss or is actionable without proof of economic loss." *Damon v. Moore,* 520 F.3d 98, 103 (1st Cir.2008) (internal quotation marks and citation omitted). At a motion to dismiss stage, "[t]he court is not called upon to determine the ultimate issue of whether the statement is defamatory, but to answer the threshold question of whether the communication is reasonably susceptible of a defamatory meaning."

*Id.; see also Amrak Productions, Inc. v. Morton,* 410 F.3d 69, 72 (1st Cir.2005) ("[W]hether a communication is susceptible of a defamatory meaning is a question of law for the court.") (internal quotation marks omitted). A communication is susceptible to defamatory meaning "if it would tend to injure the plaintiff's reputation, or hold the plaintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community." *Damon,* 520 F.3d at 103. In determining whether a statement is susceptible to defamatory meaning, "the communication must be interpreted reasonably, and can only be ruled defamatory if it would lead a reasonable [person] to conclude that it conveyed a defamatory meaning." *Id.* at 104. "Context matters in assessing such claims" and the Court must "examine the statement in its totality in the context in which it was uttered or published" and "consider all the words used, not merely a particular phrase or sentence." *Amrak,* 410 F.3d at 73. If the communication "is susceptible of both a defamatory and non-defamatory meaning, a question of fact exists for the jury." *Damon,* 520 F.3d at 103.

As an initial matter, the Freemans' conclusory allegations that Byrne and Craig "defamed them" are insufficient to state a claim for defamation. *See Iqbal,* 129 S.Ct. at 1949. As for the specific statements by Byrne and Craig, the Court finds that these statements are not reasonably susceptible to defamatory meaning. Accordingly, the Court recommends that the District Court dismiss the Freemans' defamation claims.

## III. CONCLUSION

For the foregoing reasons, I recommend that the District Court dismiss the Freemans' Section 1985 and Section 1983 claims against all Defendants. This Court further recommends that the Court decline to exercise supplemental jurisdiction with respect to the remaining state law claims. Should the District Court decide to exercise supplemental jurisdiction over the Freemans' state law claims, the Court recommends that the District Court grant Defendants' motions to dismiss as they relate to the Massachusetts Civil Rights Act, intentional infliction of emotional distress, and defamation claims and deny the motions as they relate to the abuse of process claim against Crippen and Stephens.

## IV. REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed.R.Civ.P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. *See* Fed. R.Civ.P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R.Civ.P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Phinney v. Wentworth Douglas Hospital,* 199 F.3d 1 (1st Cir.1999); *Sunview Condo. Ass'n v. Flexel Int'l,* 116 F.3d 962 (1st Cir.1997); *Pagano v. Frank,* 983 F.2d 343 (1st Cir.1993).